## STATE *EX RELATIONE* GRUBER v. KNIGHT.

1. When the writ of mandamus lies and should issue.
2. An outgoing board of county commissioners have no right, after their successors in office have been commissioned, to correct their own acts done during their term.
3. A claim for services rendered as clerk to the board of county commissioners in 1884 was presented two years afterwards to the succeeding board, by whom it was marked "approved," and afterwards (without right, their successors being in commission) it was reopened and "rejected." More than two years later (1889), a fourth board being in office, a writ of mandamus to compel payment of this claim was refused, because the claim was not presented to the board during the proper fiscal year, and because the application for the writ was so long delayed.
4. A claim for services as clerk having been presented to a board of county commissioners within the proper fiscal year and marked "approved," and afterwards (without right) reduced in amount, but it being doubtful how much was really due thereon, if anything, a writ of mandamus was refused by this court, without prejudice to a renewed application on Circuit, where questions of fact can be more readily determined.

This was an application to this court in its original jurisdiction for a writ of mandamus. The opinion states the case.

*Mr. W. B. Gruber,* for relator.

*Mr. C. C. Tracy,* contra.

April 22, 1889. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was a petition in the original jurisdiction of this court, filed January 7, 1889, for a writ of mandamus, requiring J. H. Knight, J. C. Strickland, and R. T. King, the county commissioners of Colleton County, to draw their order on the county treasurer of the county, in payment of two accounts claimed to be due the relator, W. B. Gruber, for services alleged to have been rendered by him as clerk of the board of county commissioners in the years 1884 and 1885—one for "balance due as clerk board county commissioners, fiscal year 1884, 125 days @ $1 per day, $125;" and the other for "balance due on fiscal year 1885," $217 (less paid $92) leaving

7—31

$125; aggregating $250, which petitioner claimed to be now due and owing.

The commissioners returned, that they went into office in December, 1888, and found on the records of the office the two accounts of the relator. They were endorsed as follows: "Approved Nov. 16, 1886," (signed) by W. P. Appleby, I. S. Buchanan, and M. W. Simmons, the then commissioners; but just below on the accounts were the further endorsements, as follows, viz., on the account for 1884, these words: "Reopened and rejected," and on the account for 1885, "Reopened and approved for $92," both dated December 9, 1886, and signed by two of the commissioners, Appleby and Buchanan; and the records further show that upon the same day (December 9), the commissioners (Appleby board) turned over the records of the office to their successors, who organized by electing W. A. Marshall "chairman," and the relator, W. B. Gruber, as clerk, who, it seems, had also been "clerk" of the outgoing Appleby board, and all the endorsements on his claims are in his own handwriting, as well those which purported to "reopen" and reduce them as those which originally "approved." It also appeared that the sum of $92, to which the two commissioners (Appleby and Buchanan) reduced his claims, was paid by the Appleby board, through checks issued in favor of the relator and signed by himself as clerk, viz., one for $69.-56, on November 16, 1886, the day on which the accounts were endorsed "approved," and another for the exact balance of the $92, viz., $22.44, issued by the two commissioners, Appleby and Buchanan, on December 8, 1886, which was paid to another person on the claim of the relator. It also appeared that on December 23, 1886, the Marshall board issued another check in the name of the relator for $74, which was also paid to another person, but does not seem to have been credited. Under these circumstances the respondents say, that in view of the contradictory endorsements, and having no data upon which to act themselves, they could not conscientiously order the balance of the accounts ($250) to be paid; that they could not see that it was their "plain ministerial duty" to do so, and declined to so order, unless required to do so by competent authority.

The relator replied by showing that, although the Appleby

board continued to do business up to the 9th of December, when their successors took charge of the office, the Marshall board, their successors, were duly commissioned as the county commissioners of Colleton County on December 2nd, 1886; and insisted that after that time the Appleby board were out of office, and even if all of those who had then been county commissioners had joined in the action of December 9, by which they undertook to reconsider and reduce his claims, such action would have been null and void, leaving their former "approval" unaffected, which he insists shall be enforced as a judgment of that tribunal.

According to all the authorities, the writ of mandamus only lies where there is a specific legal right or a positive ministerial duty to be performed, and there is no other appropriate remedy. When the legal right is doubtful, or the performance of it rests in discretion, the writ of mandamus cannot rightfully issue. Has the relator a specific legal right, clear and beyond doubt, to require the present board of county commissioners of Colleton County to give a check for the payment of the aggregate balance of his accounts ($250), as a plain ministerial duty resting upon them ? We can understand how the present board could not consider it "a plain" ministerial duty to order paid accounts several years old, which had come down to them from a former board— bearing the mark of their "approval," and the evidence also that shortly after they had "reopened and rejected" one of the accounts, and "reopened and reduced" the other to $92, which had been paid in full. After examination here, however, we have no difficulty as to the second endorsements on the accounts made by a majority of the outgoing Appleby board on December 9, 1886. That action was after the incoming (Marshall) board had been commissioned (December 2), and as a matter of strict law, the Appleby board were out of office, and had no right to correct their own acts done while in office. *State* v. *Brice,* 11 S. C., 344.

But considering the second endorsements made by the two commissioners as being without authority of law, it seems to us that it is at least doubtful whether the right is so plain and clear as to authorize the writ of mandamus to issue requiring the accounts to be paid. The accounts differ in some material circum-

stances, so as to make it proper that they should be considered separately.

*First*, as to the account for $125. This account was not itemized, further than to state that it was for "balance due as clerk of the board of county commissioners, fiscal year 1884," ($125). It does not appear to have been presented to the board then in office (1884), and to whom the services were rendered, but to their successors in office, the Appleby board, in the last hours of their administration (November 16, 1886). That is to say, it was not "presented to and filed with the county commissioners" during the fiscal year in which the services were rendered, nor the next thereafter. When presented it was endorsed by the Appleby board "approved," but within a short time thereafter (December 9), two of the same commissioners made on it a second endorsement, "reopened and rejected." It does not appear to have been presented to the succeeding Marshall board, and this petition to enforce payment of it was not filed until January 7, 1889, after the Marshall board had been succeeded by the present board.

Now, assuming that the character of the claim was such that the action of the Appleby board in approving it was *quasi* judicial, and that a succeeding board had no right to review and revise the action of its predecessors in approving the claim; and assuming further, that a majority of the Appleby board could not, after their successors had been sworn in, review and correct the former action of their own board, we do not think that it necessarily follows that the relator may at any future time or under any and all circumstances have the writ of mandamus to enforce payment of his claim. "The statute of limitations does not apply in terms to a proceeding in mandamus, but when there is unreasonable delay, the court, in the exercise of its discretion, may refuse to issue the writ." *State ex relatione Cummings* v. *Kirby,* 17 S. C., 566; *State ex relatione Myers* v. *Appleby,* 25 S. C., 103. As was said in the case of Appleby, *supra:* "It is manifestly the policy of the law, in reference to the administration of county affairs, to keep separate and distinct the accounts of each fiscal year, chargeable as they are upon the levy for that year;

and to that end great promptness is necessary in the presentation and settlement of county claims."

Indeed, a recent act of the legislature (1882), now section 625 of the General Statutes, declares that "No claim against any county of this State shall be valid and payable unless the same be presented to and filed with the county commissioners of said county, during the fiscal year in which they are contracted, or the next thereafter, and all claims not presented and filed as herein required, shall be forever barred." This act was ratified on February 3, 1882, immediately after the decision of the case of *County of Richland* v. *Miller* (16 S. C., 236), and we have no doubt, from its very peremptory terms, that it was intended to cut up, root and branch, all county claims not conforming to its provisions. The official term of county commissioners is short. There is an election every two years, and new men, unfamiliar with the business, are introduced into the administration of county affairs, and this affords an additional reason why county claims should be presented and considered promptly. In this case the account was not filed with the county commissioners during the fiscal year in which it was contracted or the next thereafter. The application for mandamus was not filed until January, 1889— more than four years after the services were rendered—more than two years after its presentation to the Appleby board, which placed upon it the two endorsements—first "approved" and then "rejected." Without considering the last endorsement as legally made or binding, we are unable to discover any sufficient reason, or, indeed, any reason for this delay, which, under the circumstances, we regard as against the declared policy of the State and "unreasonable." The mandamus is refused, therefore, as to the account for services as clerk of the board in the year 1884.

*Second.* Then as to the account ($217) for the fiscal year 1885. The circumstances of this account are somewhat different from that just considered. This was for "balance of account for services as clerk in the year 1885." It was, without being itemized, presented to the Appleby board in the year after the services were rendered, November 16, 1886, and endorsed "approved;" but soon after (December 9), the second endorsement

was made on it by two of the commissioners, purporting to reduce the claim to $92, which was paid. Now, disregarding the second endorsement as made without legal authority, and assuming that the $92 was only received as a payment in part of the whole claim, a balance of $125 would still remain. But the question being whether the matter is so plain as to justify the writ of mandamus, it is suggested that possibly the balance may not be still due and owing by the county, but by arrangement was settled in full at the time the two commissioners thought they had reduced the claim; that the balance of the amount to which they had reduced it ($92), having been paid by their check in favor of the relator, with his knowledge and consent, amounted to a waiver of the want of authority on the part of the commissioners, and was such assent on his part as to bind him, as in the case of *Van Hook* v. *Whitlock*, 26 Wend., 54. Besides, it was admitted that, soon after this transaction, the Marshall board, on December 23, 1886, paid to the relator the sum of $74. If that was paid upon the claim under consideration, it was certainly a recognition that the balance of the account still unpaid was a subsisting legal claim against the county, notwithstanding the cloud which had been cast upon it by the second endorsement and the receipt of the amount to which it had been apparently reduced. But in that case, it seems to us, that the amount ($74) should be credited as part payment.

These, however, are for the most part questions of fact, and we make no ruling upon them. This court, not having the machinery for the examination of witnesses, cannot determine them with the certainty and clearness necessary to authorize mandamus for the payment of the account or any part of it. But as the relator has no other remedy except by mandamus, and as possibly injustice may be done, the writ to compel payment of the account for services as clerk of the board in 1885, is refused without prejudice. We make no ruling upon the question, for the lack of sufficient information, which may be presented as an original question on the Circuit, where all the facts may be satisfactorily ascertained.

The petition is refused, but without prejudice as to the account for services in the fiscal year of 1885.