AUSTIN P. BALDWIN and Another, Respondents, *v.* ALBERT VON MICHEROUX and Others, Appellants.

83    43
27ap225

*Co-partnership — fiduciary relation of partners — employees engaged in a fraudulent
scheme with one of the partners will be restrained — letters as evidence.*

A partner occupies a fiduciary position with regard to his co-partners and the
funds of the firm, and will not be permitted to make a personal profit out of
the use of such funds.

Although partners do not, in the strict sense of the term, occupy the position of
trustees toward each other and towards the firm funds, yet the position is one
of a fiduciary nature, calling for the maintenance and exercise of the greatest
good faith between them. Such a relationship authorizes the same remedy on
behalf of the wronged partner as would exist against a trustee, strictly so called,
on behalf of a *cestui que trust.*

Where certain employees of a co-partnership co-operate with one partner in his
efforts to perpetrate a fraud upon the other partners, with full knowledge on
the part of such employees that such was the intent of such partner, and that
it was all to be done in order that such employees, as well as such partner,
should profit at the expense of the co-partnership, the court has the power to
restrain both the employees and the partner from either further proceeding with
or consummating such illegal scheme, and such employees are likewise charge-
able with the damages sustained by such co-partnership by reason of the part-
ner's misconduct.

Letters written by such partner to such employees are admissible in evidence
upon the trial of an action brought, among other purposes, to recover judg-
ment against such partner and such employees, directing them to account for
any and all profits they may have made or advantages they may have derived
from their wrongful acts in fraud of the other members of such co-partner-
ship, if the letters tend to show knowledge on the part of such employees
of the fraudulent scheme in which such partner was engaged for their mutual
benefit.

APPEAL by the defendants, Albert Von Micheroux and others,
from an interlocutory judgment of the Supreme Court in favor of
the plaintiffs, entered in the office of the clerk of the county of
New York on the 3d day of February, 1894, upon the decision of
the court rendered after a trial at the New York Special Term.

The complaint in the action contained a prayer for judgment in
the following words:

" Wherefore, these plaintiffs pray:

" *First.* That the plaintiffs and their said firm be adjudged
entitled to the sole and exclusive use of said secret process or formula

and said trade marks, 'Imperial' and 'Rose of Latakia,' or any abbreviation thereof, in connection with the manufacture and sale of tobacco flavors.

"*Second.* Judgment against the defendants Albert Von Micheroux and John Boulger, enjoining and restraining them, or either of them, from in any way using the said trade mark or any abbreviation or imitation thereof, in any way or manner in connection with the manufacture and sale of tobacco flavors.

"*Third.* Judgment against the said defendants enjoining and restraining them from using said secret process or formula, or imparting to others to the injury of the plaintiffs and their said firm

"*Fourth.* Judgment directing the said defendants to account for any and all profits they may have made or advantages derived from the wrongful use of said secret process or formula and trade marks or any of them.

"*Fifth.* Judgment against the defendant George B. Seymour as may be equitable and just.

"*Sixth.* That during the pendency of this action, the said defendants Von Micheroux and Boulger may be restrained and enjoined as above demanded.

"*Seventh.* Such other, further or different relief in the premises as may be just."

*Henry Schmitt*, for the appellants.

*William D. Guthrie* and *George C. Austin*, for the respondents.

PARKER, J.:

This controversy relates to the ownership of, and right to use, a secret or unpatented process for manufacturing tobacco flavors, and to certain trade marks and brands, used in the business of the firm of Baldwin Brothers & Co. from the time of the commencement of this suit up to January 1, 1893.

Baldwin Brothers & Co. were continuously in business in the city of New York for a period of over thirty years prior to the commencement of this suit.

One of the members of the partnership was George B. Seymour, one of these defendants, who had been a member of the firm for nearly ten years, and had been one of their clerks for some fifteen

years prior thereto. Von Micheroux, from December, 1883, until October, 1892, was in the employ of the firm as a traveling salesman, and the defendant Boulger had been in the employ of the firm as a compounder or rectifier of liquors for nearly ten years prior to the commencement of this suit. Boulger and Seymour had full knowledge of the secret process by which the tobacco flavorings were manufactured. Indeed, while its manufacture was suggested by Mr. Baldwin, the experiments were conducted almost entirely by Boulger and Seymour.

The theory of plaintiff's suit is that these defendants conspired together, while Seymour was yet a partner, and the other defendants in the employ of the firm, to form a partnership for the manufacture and sale of the tobacco flavorings, the secret process for the manufacture of which was the property of the firm of Baldwin Brothers & Co. That their plan went beyond the manufacture and sale of the product under their own firm name, and involved a scheme to wrongfully divert the business of Baldwin Brothers & Co. to themselves. To accomplish this they caused circulars to be prepared before any of them had terminated their relation with Baldwin Brothers & Co., in which they described themselves as being the sole owners of this secret process and made use of trade marks belonging to the partnership.

These circulars they sent to those dealers who had been accustomed to do business with Baldwin Brothers & Co.; that the ruin of the business of Baldwin Brothers & Co. might be more certainly accomplished for their benefit, the fact that Seymour was a member of the new firm was kept secret. He notified his partners that he should go out of the firm at their convenience, and January 1, 1893, was selected as the date of the dissolution of the firm; in the meantime he made the most of his opportunities to divert customers of Baldwin Brothers & Co. to the new firm in which his membership was kept secret.

The trial court decided that the secret process belonged to the firm of Baldwin Brothers & Co. prior to its dissolution, which took place December 31, 1892; that the manufacture and sale of the extracts by the defendants prior to such dissolution was a fraud upon plaintiffs and that defendants should account therefor; that an injunction should issue restraining defendants from representing

by the issuing of circulars, or otherwise, that they were the exclusive owners of the secret process or of the trade marks and devices used in connection with the goods manufactured by such process. The conclusions of fact upon which the judgment is based are entirely sufficient for its support, and the reasons presented by the trial court for its decision are so satisfactory as to make it wholly unnecessary for this court to attempt to add anything to them.

The appellants insist that there were errors in the rulings of the trial court. Some of the findings of fact, they urge, are unsupported by evidence. We cannot agree with them, but think there was evidence upon which to base every inference of fact.

The appellants press upon the attention of this court exceptions taken to the admission in evidence of certain letters written by Seymour to Von Micheroux and Boulger during the time which elapsed between the agreement to form the new firm and the commencement of this suit, and from which it appears that Seymour was employed in taking away from his long-time partners all the trade he could reach. .These letters disclose some of the fraudulent practices of which Seymour was guilty. They tend to show the nature of the conspiracy to wrong Baldwin Brothers & Co., and make clear that Von Micheroux and Boulger were fully aware of the secret and fraudulent work in which Seymour was engaged against his old firm for the benefit of the new one. A reference to some of their letters will cause it to appear that the trial court was not in error in receiving them. November fourteenth, Seymour, then the plaintiffs' partner, wrote to his partners in the new firm expressing his annoyance that the plaintiffs had received an order from one of their regular customers, and makes an inquiry which indicates a wonder on his part whether their fraudulent scheme had proved ineffective in that one case, or whether Von Micheroux had neglected to perform his part of the work. It contains other suggestions of duplicity. But let the letter speak for itself.

" I have just come from 53 Broadway, and am very much annoyed to report we rec'd to-day 90 gal. more from Stern Bros., Chicago. What ails these d——n Jews? Did you not send them a circular? I have also other news to report. The enclosed is a copy of a letter from B. Bros. & Co., lawyers to A. P. B., upon the propriety of suing out an injunction upon us. I am going there to-morrow,

probably, but 1 am of the opinion, when I am through there, there will be no injunction, I am quite sure."

The day following, November fifteenth, Seymour advises what plaintiffs' travelling salesman was doing.    The next day he informed Von Micheroux that there might be danger that Marburg, one of plaintiffs' oldest customers, would send an order to Baldwin Brothers & Co. instead of defendants.    In the letter of November nineteenth, to Von Micheroux, Seymour says, among other things, " We have got them tight, I think, beyond all doubt.    They *don't dare* to attempt such a thing.    Baird (the plaintiffs' traveller), as I wrote you, went out over the N. Y. Central road, but, so far, has sold nothing.    Only one letter from him since Monday, and no report of work beyond Albany.    *    *    *    They will have to discharge him and try it again, which will probably take the wind out of their sails and all the fight out of them as well.    From what I hear the latter is pretty well squeezed out of them now.    On Monday I am to see Guthrie, and you bet I will feel pretty independent.    I know where I stand better than they do.    *    *    *    They are dying fast, much faster even than Roberts, and I hardly think six months will see them in the 'biz.'    If we hold Finzer and your old trade they won't last even that long after I leave."

From the letter of November twenty-second we take the following : " But we doubt it.    Of course, they *may* be foolish enough to do so.    No one can tell what fools *may* do.    *    *    *    Please, in all first orders, don't fail to give prices, terms, &c., as soon it will be impossible for writer to have access to B. B. & Co.'s to get these particulars.    *    *    *    No orders at 53."

These letters fairly indicate the general character of those received by the court which defendants insist were immaterial. That Von Micheroux was as blameworthy as the other two defendants appears from his letters generally, and particularly in one of November 15, 1892, immediately after the order from Chicago, of which Seymour complains in his letter of November fourteenth. He writes : " I think we better send at once our Trade Mark to Washington and *have it registered.    I think you better communicate with Mr. Seymour at once, and that he shall attend to it at once without delay.*    Am sorry to see the order from Chicago in our enemy's hands, but, of course, it cannot be helped for the present.

By New Year's all the agony will be at an end. All the trade has received our circulars. Nothing more to state. I am, dear sirs." Of course it is not pretended by the appellants that these letters did not show unlawful conduct on the part of Seymour, but they insist that they could in no way affect the defendants Boulger and Von Micheroux, because they were not like Seymour a partner in the firm of Baldwin Brothers & Co., but merely employees, and so could leave the business at any time and engage in business on their own account. That Seymour's conduct was of such a character as would cause a court of equity to restrain him from committing further frauds of the character described in the letters written by him, and charge him with the damages resulting from the fraudulent acts already committed, is so well established as not to require citation of authority. The reason for it is well stated in *Holmes* v. *Gilman* (138 N. Y. 369). At page 377 the court said : " That a partner occupies a fiduciary position with regard to his co-partners and the funds of the firm, and will not be permitted to make a personal profit out of the use of such funds, is, I think, clearly established. * * * Although partners do not, in the strict sense of the term, occupy the position of trustees towards each other and towards the firm funds, yet the position is one of a fiduciary nature, calling for the maintenance and exercise of the greatest good faith between them. Such a relationship authorizes the same remedy on behalf of the wronged partner as would exist against a trustee, strictly so-called, on behalf of a *cestui que trust.*"

Now, while Von Micheroux and Boulger were not partners of Baldwin Brothers & Co., and did not stand in a fiduciary relation to plaintiffs, still they were co-operating with Seymour in his efforts to perpetrate a fraud upon his partners, with full knowledge on their part that such was his intent, and that it was all to be done in order that they as well as Seymour should profit at the expense of Baldwin Brothers & Co. The court had the power to restrain them as well as Seymour from either further proceeding with or consummating such illegal scheme. For the damages sustained by plaintiffs because of Seymour's conduct, the other defendants were participants and likewise chargeable. This proposition is supported by *Emery* v. *Parrott* (107 Mass. 95). We quote as especially applicable to the facts of this case, from the opinion as follows : " The case

of the defendant Head stands somewhat differently, but is governed by the same general principles. He did not stand in any fiduciary relation to the plaintiffs. But he knew the position of Parrott, and became the partner of Parrott, uniting with him to effect a sale of the property to Parrott and the plaintiffs for the sake of dividing with Parrott the secret commission which the owner of the property had agreed to pay for effecting the sale. He was thus fully cognizant of the illegal conduct of Parrott, and co-operated with him in inducing the plaintiffs to make the purchase. He participated in the profits of the transaction; and the court are of opinion that he, as well as Parrott, must disgorge the secret gain which they thus jointly obtained and divided with each other."

If this position be well taken, it follows that evidence, tending to show knowledge on the part of Von Micheroux and Boulger of the fraudulent practices in which Seymour was engaged for their mutual benefit, was properly admissible against them.

Such was the purport of these letters. We have not, of course, referred to all of them, but to enough at least to point out that from day to day Seymour was putting them in possession of accurate information touching the steps being taken by him to mislead and defraud his partners. The letters were all of the same general character, and they had the effect to inform the defendants Boulger and Von Micheroux of substantially everything that was being done by Seymour, which was in violation of the relation existing between him and the other members of the firm of Baldwin Brothers & Co., and, therefore, the evidence was material. There were a number of exceptions taken to the admission of evidence, but we do not think they call for a reversal of the judgment.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.