STATE *EX REL.* GUENTHER v. THE CHARLESTON LIGHT
AND WATER CO.

1. HIGHWAYS.—MANDAMUS is not the proper remedy to relieve individuals of the obstruction of a navigable stream by dam, when no *special* or *peculiar* injury is shown to result to them from that resulting to the general public.
2. NUISANCE—HIGHWAYS.—OBSTRUCTIONS of a navigable stream by remodelling a lock in a dam, the one first put in having proved defective, does not belong to the class of permanent obstructions.

Petition in the original jurisdiction of this Court by Pauline M. Guenther, C. O. Witte, A. M. Lee, Henry A. M. Smith, Henry E. Young and Paul Grant, for writ of mandamus against The Charleston Light and Water Co.

*Messrs. Buist & Buist, Mitchell & Smith,* and *Smythe, Lee & Frost,* for petitioners.

*Messrs. W. C. Miller* and *P. H. Gadsden,* contra.

April 20th, 1904. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The relators above named have applied to this Court, in its original jurisdiction, for a writ of mandamus to compel the respondent to open up to navigation Goose Creek, a navigable stream in the county of Berkeley, in the State aforesaid, across which, from side to side of said Goose Creek, the respondent has placed a dam extending from bank to bank of said stream, thereby closing the same to all vessels, boats, etc.; which occurred early in December, 1903, demands having been made by the relators, who are the riparian owners of lands on each side of said Goose Creek from the dam to some distance above said dam, upon the respondent to remove so much of said dam as is essential to the navigation of the waters of said Goose Creek, which the respondent has declined to do. In order to correctly apprehend the issues tendered by the petition, as

based upon the facts alleged therein, it will be necessary to set forth the petition in terms (omitting the caption). The following is a copy thereof:

"To the Supreme Court of the State of South Carolina: The petition of Pauline M. Guenther, C. O. Witte, A. M. Lee, Henry A. M. Smith, Henry E. Young and Paul Grant, relators in the above entitled proceeding, respectfully petitioning this honorable Court, shows:

"First. That under and by virtue of article V., section 4, of the Constitution of the State of South Carolina, and section 11 of the Code of Procedure of said State, the Supreme Court of South Carolina has power to issue writs or orders of mandamus, and other remedial and original writs.

"Second. That under and by virtue of an act of the General Assembly of South Carolina, entitled 'An act to incorporate The Charleston Light and Water Company,' approved the 19th day of February, 1898, The Charleston Light and Water Company became incorporated and is a corporation carrying on business in the State under the laws of South Carolina and exercising its franchises thereunder, which act is in terms set out in 'Exhibit A,' and made a part of this petition.

"Third. That on the twenty-third day of June, 1902, the Honorable Wm. Cary Sanger, assistant secretary of war, isssued the following approval for respondent's dam, to wit:

" 'Whereas, by section 9 of an act of Congress, approved March 3, 1899, entitled 'An act making appropriations for the construction, repair and preservation of certain public works on rivers and harbors, and for other purposes,' it is provided that bridges, dams, dikes or causeways may be built under authority of the legislature of a State across rivers and other waterways, the navigable portion of which lies wholly within the limits of a single State, provided the location and plans thereof are submitted to and approved by the chief of engineers and by the secretary of war before construction is commenced:

" 'And whereas, The Charleston Light and Water Com-

pany, a corporation existing under the laws of the State of South Carolina, having authority of the legislature of the State of South Carolina to construct a dam across Goose Creek, in said State, has submitted a map of the location and plans of the same, which have been approved by the chief of engineers:

" 'Now, therefore, This is to certify that the map of location and plans of said dam, which are hereto attached, are hereby approved by the secretary of war, subject to the following conditions:

" '1. That the engineer officer of the United States army, in charge of the district within which the dam is to be built, may supervise its construction, in order that said plans shall be complied with.

" '2. That the prolongation of the canal at both ends shall be dredged to full depth and width till it meets the channel of the creek.

" 'Witness my hand, this 23d day of June, 1902.

" 'WM. CARY SANGER,

" 'Assistant Secretary of War.'

"That the plans and specifications referred to above by the said assistant secretary of war provided for a canal and lock through said proposed dam and connecting the said stream on either side of said dam, having the following dimensions, to wit: a length of fifty-five feet, a width of eighteen feet and a depth at low water of seven feet.

"Fourth. That on or about the      day of January, 1904, the respondent presented to the engineer office of the United States, at Charleston, S. C., new plans and specifications providing for a canal and lock through said proposed dam and connecting the said stream on either side of said dam, having the following dimensions, to wit: a length of fifty-five feet, a width of eighteen feet and a depth at low water of seven feet, which plans and specifications do not materially differ from the former specifications above referred to except as to the location and construction of the lock and spillway,

and which have not yet been approved by the chief of engineers and the secretary of war.

"Fifth. That under a public call made by the captain of United States engineers, stationed at Charleston, S. C., for objections, if any, to the aforesaid new proposed plans and specifications, the following propositions were submitted against them on January 11th, 1904, to wit:

" 'I. That the dimensions of the locks embodied in the specifications submitted to the United States government are too small.

" 'II. That the dam in its present state does not accord with the specifications assented to by the United States government, and blocks all traffic on the river, whereby the corporation has become criminally liable, and may be compelled to remove the said dam.'

"Sixth. That in the county of Berkeley, State of South Carolina, there flows a large navigable stream, known as Goose Creek, in which the tide ebbs and flows, and which from time immemorial has been capable of navigation in fact, and has been freely and commonly used for navigation by the public in general, and especially by or in behalf of the riparian proprietors and owners of the lands, plantations and fields lying upon the borders of said stream. That your relators herein are the owners of large tracts of lands bordering on said stream at points on which the said stream is navigable in fact and lying above the dam hereinbefore referred to, which is being erected by the said The Charleston Light and Water Company, through its agents or contractors; and which said stream as aforesaid was and is navigable in fact from the lands of your relators as aforesaid to its mouth, emptying into Cooper River, S. C., a large navigable stream, which in turn empties into Charleston harbor, and thence connects with the Atlantic Ocean. But that said navigation has been obstructed in the past few weeks by the said dam of the said The Charleston Light and Water Company, as will more fully hereafter appear.

"Seventh. That the said The Charleston Light and Water

Company, through its agents and contractors, are erecting a dam across the said stream known as Goose Creek, in the county of Berkeley, State of South Carolina, at a point next below the lands of all these relators on said stream, and at a point where said stream was navigable in fact; which said dam has and does cut off and prevent the continuous navigation of said stream from above to below said dam and the opposite, to the detriment of the rights of the public to navigate the said stream, and especially of these relators, upper proprietors or owners on said stream with regard to the right of navigation for themselves, agents or servants to and from their said lands bordering on said stream.

"Eighth. That on the twenty-third day of December, 1903, the agent of these relators, while proceeding in a steamboat from the city of Charleston, S. C., to the said dam aforesaid, for the purpose of navigating the said stream to the said lands of the relators lying upon the same, arrived at the point on said stream where the said dam has been erected below the said lands of your relators, and found the same utterly impassable to navigation by reason of being obstructed by the said dam of the said The Charleston Light and Water Company. That then and there he requested and demanded a passage way through said dam, but the same was not given, as the said stream was closed at said point by said dam, so that the navigation of the same was obstructed and impassable, and was told by the party in charge of the construction of said dam that such had been the state of affairs for six weeks, and would continue for six weeks more.

"Ninth. That the following correspondence passed between the attorneys of the relators and respondent through letters which were delivered and received, to wit:

" 'Charleston, S. C., December 31st, 1903.

" 'Mr. Morris Israel, Vice-President of The Charleston Light and Water Co., Charleston, S. C.

" 'Gentlemen : In behalf of Pauline M. Guenther and other riparian proprietors owning lands located above your proposed dam on Goose Creek, we beg leave to respectfully de-

mand that the said dam which now obstructs navigation be forthwith so conducted as to cease said obstruction.    Your prompt reply is requested.

" 'Yours respectfully,

" 'BUIST & BUIST, Attorneys,

" 'SMYTHE, LEE & FROST, Attorneys,

" 'MITCHELL & SMITH, Attorneys.'

" 'Charleston, S. C., Jan. 6, '04.

" 'Messrs. Buist & Buist, Smythe, Lee & Frost, and Mitchell & Smith, city.

" 'Gentlemen: Yours of the 31st received.    In reply I beg to say that this company has made application to the United States engineer at Charleston for approval of plans and location of lock to be constructed on Goose Creek, which lock when constructed it is contemplated will remove all obstacles to navigation.    I understand that the engineer will shortly give notice of public hearing on this matter, at which time we will be glad if you will present any objections which you may have to the proposed lock.

" 'Yours truly,                M. ISRAEL,

" 'V. P. Chas. Light and Water Co.'

"Tenth. That the navigation of the said stream as aforesaid still remains obstructed, and relators allege that it will take several months to construct the proposed lock above referred to.

"Eleventh. That by the erection of said dam obstructing the navigation of the said stream as aforesaid, the said The Charleston Light and Water Company, if possessed of the right to construct a dam across said navigable stream (which relators do not admit), possessed it by reason of its charter and rights thereunder, and that it had violated its alleged charter powers as above set forth, in that it has failed to conduct the said dam across said navigable stream as aforesaid in such manner as shall not obstruct the navigation of the stream.

"Twelfth. That your relators have no other adequate

35—68

remedy than the writ of mandamus, which is herein peti-
tioned from your honorable Court.

"Wherefore, these relators pray that a writ of mandamus
be issued by this honorable Court, commanding The Charles-
ton Light and Water Company to forthwith conduct the said
dam across the said navigable stream known as Goose Creek,
so that the said dam shall not obstruct the navigation of said
stream."

And "Exhibit A" exhibited with said petition:

"An act to incorporate The Charleston Light and Water
Company.

"Whereas, the General Assembly of this State has at the
present session, by a two-thirds vote of each house on a con-
current resolution, allowed a bill for a special charter of 'The
Charleston Light and Water Company' to be introduced:

"Section 1. Be it enacted by the General Assembly of the
State of South Carolina, That Samuel Lapham, Charles R.
Valk, W. H. Welch, R. G. Rhett, H. F. Bremer, George I.
Cunningham, Morris Israel, John C. Simonds, and their
associates and successors, shall be, and they are hereby,
incorporated and declared a body politic and corporate under
the name of 'The Charleston Light and Water Company,' for
the purpose of introducing a water and light supply into the
city of Charleston for its public purposes, which corporation
shall have power to make, use, have and keep a common seal,
and the same at will to alter; to make all necessary by-laws,
not repugnant to the laws of the land, and to have succession
of officers and members conformably to such by-laws; and
to sue and be sued, implead and be impleaded, in any Court
of law or equity in this State; and to have, use and enjoy
all other rights and be subject to all other liabilities which are
incident to other bodies corporate.

"Section 2. The said corporation may purchase and hold
all such real and personal estate as may from time to time be
required for its purposes, and may dispose of the same in
such manner and on such terms as it may deem proper; it
shall have full power to lease, sell, donate or convey the

same to individuals or other corporations; or in the conduct and management of its business it shall have full power to invest the whole or any part or parts of its funds or property in the capital stock or bonds of and become a stockholder by subscription, either in cash or in property, real and personal, or by purchase of stock in any other corporation formed or to be formed, and to retain or dispose of such stock in whole or in part at pleasure, exercising all the rights and powers of stockholders in such corporations; to lease, construct and operate, or to assist other persons or corporations in such manner as the said corporation may deem desirable in leasing, constructing, owning and operating water works, gas, oil, electric or other lighting, heating and power plants, and at its pleasure to incorporate the same; to issue bonds from time to time, in such amounts as it may deem proper, for the payment of money borrowed or for its indebtedness, and to secure the same by mortgage or mortgages on the whole or any part of its property.

"Section 3. The said company shall have full power and authority to take, hold and convey water from any point from any river, creek, springs or other sources within sixty-five miles of the city of Charleston, into and through the said city, with the consent of the city council of Charleston first had and obtained, and shall have full power and authority to make canals, build dams, erect locks, lay conduits or tunnels for the conveyance of said water, through, under or along any highway or railroad track or tracks in the country adjacent, or any street or streets, lane or lanes, alley or alleys of the city of Charleston, for the purpose of conveying and distributing said water; and the canals, locks, dams, conduits or tunnels from time to time to renew or repair, and for such purpose to dig, break up and open at their own expense all and any part of highways, streets, lanes and alleys and of the middle or side pavements thereof, leaving at all times a sufficient passage for carriages, horses and foot passengers, and restoring forthwith to their former condition all such highways, streets, lanes and alleys, and the pave-

ments thereof, as may at any time be taken up, opened or dug; and as aforesaid, the said corporation may, by purchase or otherwise, take and hold any land necessary for the establishment of their works, and also all private rights of way, water courses or other easements which may be on or along the route through which such canals, locks, dams, conduits or tunnels shall pass, and may conduct such canals, locks, dams, conduits or tunnels over or through any public road, river, creek, water course or waters that may be on the route, but in such manner as shall not obstruct the passage of the public road or navigation of the stream.

"Section 4. The said corporation shall also have full power to do all acts necesary to open, construct and operate such system or systems of water works, electric, gas, oil or other lighting, heating or power plants as it may deem advisable, and to extend and enlarge the same from time to time as it may deem necessary; and so far as its water works are concerned, it shall be at liberty to draw water from such source or sources of water as may be most convenient; and to establish reservoirs, fountains and hydrants in such parts of the streets, lanes and alleys of the city of Charleston, with the consent of the city council of Charleston, first had and obtained, to be connected with the works, as they may think proper; and it shall be a misdemeanor, punishable by fine or imprisonment, or both, for any person in any way to defile or pollute the waters in any such source, water supply, canal, conduit or tunnel used, or to be used, by said company, or to obstruct or in any way damage the same, or divert the water therefrom, without permission from the said corporation, or to carry off without permission, break or injure any pipe, cock, valve, machinery or other property that may be used in connection with said water supply, or take water from any hydrant, cock or other fixtures connected with said water works, without permission from the said corporation, or for any person having charge or control of any hydrant or water pipe connected with said water works to allow or permit any other person to take, draw or use water

from the same without permission from the said corporation, or for any person, by false key or otherwise, after the water shall have been shut off from the premises by said corporation, to cause or suffer the said premises to be again supplied with water from said water cocks without permission from the said corporation.

"Section 5. The said corporation, being for public purposes, shall have the right to condemn such property, rights of way or water sources as may be necessary to enable said company, or the corporation organized by it, or with its assistance, to successfully construct, erect and operate the said canals, locks, dams, conduits or tunnels, water works, electric, gas, oil or other lighting, heating and power plants, on payment to the owner or owners thereof of just compensation, such property, rights of way or water sources to be condemned and such condemnation to be determined in the manner now provided by law for the condemnation of lands and rights of way by railroad corporations.

"Section 6. The capital stock of the corporation shall consist of five hundred shares of one hundred dollars each, and may be organized by the said corporators, or a majority of them, upon the *bona fide* subscription of not less than fifty per cent. thereof and the payment of not less than twenty per cent. of the amount so subscribed to the corporators above named or their duly appointed treasurer: *Provided, however,* That a majority of the board of directors of the said corporation shall have the power, from time to time, and as occasion may require, to increase the said capital stock to any extent not exceeding three million dollars, whenever they deem proper to do so; and the said corporation shall, by its by-laws, provide for the manner of raising and distributing such additional capital stock. Each stockholder shall be individually liable to the creditors thereof only to the extent of the amount remaining due to the corporation upon the stock owned by him.

"Section 7. Each stockholder shall have one vote for each share of the capital stock of the said corporation he may own

or represent at all the elections and all meetings of the company; and the said corporation shall have the authority in its by-laws to make such regulations as may be deemed proper for representation by proxy of such stockholders as may be absent at such elections and meetings.

"Section 8. The capital stock of the said corporation shall be deemed personal property, and the said corporation shall have authority in its by-laws to make all such regulations as may be deemed necessary and proper for the issuing and transfer of such stock, for collecting and enforcing by sale or otherwise, all subscriptions made thereto.

"Section 9. That if any person or persons shall wantonly, negligently or maliciously divert the water, or any part thereof, of any ponds, streams or water sources which shall be taken by said company in pursuance of the provisions of this act, or shall corrupt the same, or render it impure or offensive by mingling other substances with it, or by washing or swimming in it, or by erecting any privy or nuisance near it, or by any other means whatever, or shall injure or destroy any dam, lock, aqueduct, pipe, wire, conduit, tunnel, hydrant, machinery or any other property held, owned or used by the said company, its lessees or assigns, by the authority and for the purposes of this act, any such person or persons shall forfeit and pay the said company, its lessees and assigns, treble the amount of damages sustained by such injury, to be recovered in any court of competent jurisdiction; and any such person or persons shall moreover be deemed guilty of a misdemeanor, and may on indictment and conviction thereof be punished by fine not exceeding five hundred dollars, and imprisonment not exceeding one year, at the discretion of the Court.

"Section 10. That any such action or complaint by said company, its lessees or assigns, against any person or persons whomsoever on account of or grounded on a trespass or injury done to the said work, or any dam, lock, aqueduct, pipe, wire, conduit, tunnel, hydrant, machinery or other property of said company, or appertaining to the same, shall

in every instance be held and deemed as transitory in its nature, and may be brought, sustained and tried in any Court of this State having jurisdiction in such like case; and nothing in this act providing for special remedies of the said company, its lessees or assigns, shall be construed to deprive them of the right or impair the same of bringing any suit, in law or equity, to which they would otherwise be entitled.

"Approved the 19th day of February, A. D. 1898."

On the 14th day of January, an order was passed by this Court, requiring the respondent on the 22d day of January, 1904, to make a return to said petition. Accordingly, on the said 22d day of January, 1904, the respondent made its full return, and on the date fixed for hearing, after said return had been submitted to the Court, the respondent interposed its demurrer to the complaint, which was as follows (omitting the caption) :

"The defendant, The Charleston Light and Water Company, demurs to the petition herein, upon the ground that said petition does not state facts sufficient to constitute a cause of action; and that it appears upon the face thereof, that the relators are not entitled to the relief prayed for, in that:

"*First.* It appears from the allegations of the said petition that the petitioners are not entitled to a writ of *mandamus,* but that their only remedy is by indictment.

"*Second.* In that said petition does not allege any peculiar or special damage suffered by the petitioners."

The consideration of the demurrer will render unnecessary the reproduction in this opinion of the respondent's return to the rule. The province in law of a writ in mandamus is to afford redress where a party has a right to have anything done and has no other specific means of compelling its performance. The writ is also applicable in certain cases where a duty is imposed by statute for the benefit of an individual. Thus, it lies to compel a railway company to comply with the provisions of its charter for

the benefit of private persons—*e. g.,* to build a bridge, open a road, etc.   R. & L. Law Dictionary, page 787.   Or, as is said in *State* v. *Appleby,* 25 S. C., 100: "Mandamus only issues when there is a specific legal right or a positive duty to be performed and there is no other appropriate remedy." To the same effect, *State* v. *Hagood,* 30 S. C., 519, 9 S. E., 686; *State* v. *Knight,* 31 S. C., 81, 9 S. E., 692; *State* v. *Burnside,* 33 S. C., 276, 11 S. E., 787; *State ex rel. Mackey* v. *Commissioners,* 15 S. C., 322.   In the last case cited, this Court said: "It is sometimes said that mandamus is not a writ of right, but lies in the discretion of the Court, and in granting or refusing it the Court should be governed by what seems to be necessary and proper to be done in the premises for the purpose of justice.   If this means that it is in the absolute discretion of the Judge to grant or refuse it, there could be no appealable error in the order of the Judge refusing it; for to say that a matter is within the discretion of the Judge, is but another mode of saying that it is beyond control.   But we understand the discretion here spoken of to be that defined by Lord Mansfield, in *Rex* v. *Wilkes:* 'Discretion when applied to a court of justice means sound discretion guided by law.   It must be governed by rule, not by humor; it must not be arbitrary, vague and fanciful, but legal and regular.' "

The object of the writ in this case, as before stated, is to remove an obstacle in this navigable stream which by law is open to the use of every person desiring to navigate it. A navigable stream is but a highway open to the use of all. The law is well settled in this State in regard to highways, that an obstacle therein, unless the same cause special or peculiar injury to a particular individual, is only an invasion of the rights of the public.   If the rights of the public are effected, redress of this wrong must be by indictment.   If a special or peculiar injury is wrought to any individual, a writ of action or an application for a writ of mandamus will lie at the instance of said special individual.   This is no new question in this State.   There are many cases in our reports

which so assert the law to be; for instance: *Carey* v. *Brooks,* 1st Hill, 365; *Steamboat Company* v. *Railroad Company,* 30 S. C., 539, 9 S. E., 650; *Steamboat Company* v. *Railroad Company,* 46 S. C., 327, 24 S. E., 337. In *Steamboat Company* v. *Railroad Company, supra,* the late Chief Justice McIver, as the organ of this Court, said: "There can be no doubt that the Congaree, being a navigable river, is a public highway, the obstruction of which constitutes a public nuisance, the remedy for which is by indictment, and that remedy, it seems, has already been applied in the case of this obstruction. *State* v. *South Carolina Railway Company,* 28 S. C., 23. It is, however, true that an individual who has sustained any particular or special injury over and above that sustained by the public generally, as the direct result of such obstruction, may also sustain a civil action to recover damages for such injury. * * * While it seems to be very generally, if not universally, conceded that in order to sustain such an action as this, the plaintiff must allege and prove some special, particular or peculiar injury beyond that sustained by the public generally, * * * without going here into a detailed examination of the cases in England and other States, many of which we have examined, it seems to us that the true rule to be deduced from them is, that the injury must be particular—as several of the cases express it, 'special or peculiar'—must result directly from the obstruction, and not as a secondary consequence thereof, and must differ in kind and not merely in degree or extent, from that which the general public sustains. This rule is fully supported by what few authorities we have in this State upon the subject."

Now, coming to the question presented by the case at bar, we must say that there is no special or peculiar injury alleged in the complaint as existing to any one or all of the relators so as to put himself or herself within the rule we have already announced. Any remedy, therefore, is not theirs specially, but that of the general public.

There is another view presented by the respondent, that the failure of the respondent to have a lock inserted in the

dam so as to allow full navigation of the waters of Goose Creek, is but a temporary condition. The respondent had a lock inserted in its dam, but being defectively constructed, although approved by the United States government, it failed to give the public the advantage which was expected from it, and a new lock is being constructed as expeditiously as the respondent can do so. So this case does not fall within the rules governing permanent obstructions; but, on the contrary, belongs to that class of cases such as obstructions in the highway where material is placed in said highway in order to have a building erected alongside of the highway.

The views we have herein presented negative the rights of the relators to the relief prayed for. It is, therefore, the judgment of this Court, that the writ of mandamus shall not issue and that the petition is dismissed.