# UNITED STATES EX REL. ARANT *v.* LANE.

PUBLIC OFFICER; REMOVAL; MANDAMUS; LACHES.

An unexcused delay of twenty months by the superintendent of a national
    park, in seeking reinstatement by mandamus, after removal from
    office under circumstances precluding expectation of restoration, is
    such laches as will justify denial of the relief sought.

No. 2853.  Submitted January 8, 1918.  Decided February 4, 1918.

HEARING on an appeal from an order of the Supreme Court
of the District of Columbia denying a writ of mandamus to
compel the Secretary of the Interior to restore the petitioner to
office.                                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

Relator William F. Arant was appointed superintendent of
Crater Lake National Park June 25, 1903.  On June 7, 1913,
the Secretary of the Interior of the United States requested
relator to resign.  To this request relator replied that he was
within the classified civil service of the United States, and pro-
tested against his removal until charges had been preferred
against him in writing and he had been given an opportunity
to answer the same.  In response to this communication, the
Secretary telegraphed him as follows: "Answering letter 17th
you are hereby removed from position superintendent Crater
Lake Park, effective close June 30.  Transfer property new
Supt. Steel July 1."  Further unimportant communications
passed, when, on July 20, 1913, the United States marshal for
the district of Oregon, acting under orders from Washington,

NOTE.—Authorities discussing the question of right to mandamus to
restore to office one who has been illegally removed therefrom are collated
in a note in 19 L.R.A.(N.S.) 49, 66.

ejected relator from office and turned the office over to his successor Steel.

About twenty months thereafter, relator filed a petition in the Supreme Court of the District of Columbia praying that a writ of mandamus issue requiring respondent Secretary to vacate his order and to restore him to his office. From an order denying the writ this appeal was taken.

*Mr. Samuel Maddox* and *Mr. H. Prescott Gatley*, for the appellant, in their brief cited:

*Abraham* v. *Ordway*, 158 U. S. 416; *Barbour* v. *Moore*, 10 App. D. C. 30; *Bend* v. *Hoyt*, 13 Pet. 293; *Church of the Holy Trinity* v. *United States*, 143 U. S. 457; *Hobbs* v. *McLean*, 117 U. S. 567; *Kalbfus* v. *Siddons*, 42 App. D. C. 310; *Keim* v. *United States*, 177 U. S. 290; *Maxwell* v. *Moore*, 22 How. 185; *Montclair* v. *Ramsdell*, 107 U. S. 147; *Market Co.* v. *Hoffman*, 101 U. S. 112; *Pirie* v. *Chicago T. & T. Co.* 182 U. S. 438; *Speed* v. *Common Council, &c.*, 22 L.R.A. 842; *St. Paul, &c., R. Co.* v. *Phelps*, 137 U. S. 528; *United States ex rel. Taylor* v. *Taft*, 24 App. D. C. 95; *United States* v. *Gooding*, 12 Wheat. 460; *Wehrman* v. *Conklin*, 155 U. S. 314; *Wilson* v. *New*, 243 U. S. 333; *Yturbide* v. *United States*, 22 How. 290.

*Mr. Preston C. West, Mr. C. D. Mahaffie, Mr. C. Edward Wright,* and *Mr. Charles Warren,* for the appellee, in their brief cited:

*Arends* v. *Kansas City*, 57 Kan. 350; *Bird* v. *United States*, 187 U. S. 118; *Bostwick* v. *Fire Dept.* 49 Mich. 513; *Carr* v. *Gordon*, 82 Fed. 373; *Chinn* v. *Trustees*, 32 Ohio St. 236; *Church of the Holy Trinity* v. *United States*, 143 U. S. 57; *Eggleston* v. *Kent*, 50 Mich. 147; *Hawaii* v. *Mankichi*, 190 U. S. 197; *Heydenfeldt* v. *Daney Gold, etc., Co.* 93 U. S. 634; *Lau Ow Bew* v. *United States*, 143 U. S. 457; *Morgan* v. *Munn.* 84 Fed. 551; *Oates* v. *National Bank*, 100 U. S. 239; *People ex rel. Connolly* v. *Board of Education*, 99 N. Y. Supp. 737; *People ex rel. Millard* v. *Chapin*, 104 N. Y. 96; *Schultheis* v.

Chicago, 240 Ill. 167; State ex rel. Gruber v. Knight, 31 S. C. 81; State ex rel. McCabe v. Police Board, 107 La. 162; Stone v. Board, 164 Ky. 640; Studebaker v. Perry, 184 U. S. 258; Taylor v. Councilmen, 57 N. J. L. 376; Taylor v. Kercheval, 82 Fed. 497; United States v. Kirby, 7 Wall. 482; United States ex rel. Taylor v. Taft, 24 App. D. C. 95.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Relator bases his right to reinstatement upon the failure of respondent Secretary of the Interior to comply with the provisions of sec. 6 of the Act of Congress of August 24, 1912 (37 Stat. at L. 555, chap. 389, Comp. Stat. 1916, sec. 3287), which, among other things, provides:. "That no person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing, and the person whose removal is sought shall have notice of the same and of any charges preferred against him, and be furnished with a copy thereof, and also be allowed a reasonable time for personally answering the same in writing; and affidavits in support thereof; but no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal."

The appeal can be disposed of without reference to the status of relator under the Civil Service Act. While it is true that mandamus is a statutory proceeding, and no longer regarded as a prerogative writ, it "is an extraordinary remedial process which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion. * * * Although classed as a legal remedy, its issuance is largely controlled by equitable principles. Duncan Townsite Co. v. Lane (U. S. Adv. Ops. 1917–18, p. 83) 245 U. S. 308, 62 L. ed. —, 38 Sup. Ct. Rep. 99. It follows, therefore, that the court to which the application is made, in the exercise of sound judicial discretion, will not necessarily be governed by the letter of the Statute of Limitations in granting or refusing the writ. People ex rel. Mil-

*lard* v. *Chapin,* 104 N. Y. 96, 102, 10 N. E. 141; *State ex rel. Gruber* v. *Knight,* 31 S. C. 81, 84, 9 S. E. 692.

In applying for relief, relator offers no excuse for his long delay. He was removed under circumstances which conclusively precluded any reasonable expectation of restoration. True, he avers that "from the time of his unlawful removal from said position as aforesaid, relator has made every reasonable effort to have his rights in the premises accorded him, and to be restored to the office of superintendent as aforesaid, but without avail. By and through his attorneys, relator has formally requested of said defendant that he restore him, the said relator, to the office of superintendent, as aforesaid, but said defendant declined and refused and still refuses to comply with such request." Not only is this averment denied in the return, but it fails to show that relator was deterred from applying to the court by any action of respondent which reasonably could have led him to believe that his request for restoration to the office would be granted.

On the other hand, his successor qualified, and for almost two years performed the duties of the office and drew the salary and allowances appropriated by Congress, while relator sat by inactive, except to protest and transmit his bills for salary to the Secretary. It is reasonable to assume that new conditions arose from time to time in conducting the park, calling for changes of policy in its superintendence, to the extent possibly of requiring that the officer in charge possess different and additional qualifications than formerly had been exacted, all of which suggests the necessity of promptness in challenging the action of the Secretary. The administration of the affairs of the government are of too vital importance to the public to be interrupted by the application of extraordinary remedies to assuage the protracted grievances of an official who may have been discharged without a technical compliance with the rules of procedure authorizing his dismissal from office. If a discharged official were reinstated under the circumstances of this case, it might result in his immediate discharge by the mere filing of reasons in writing upon which he would not even be entitled to a hearing. Hence, long delayed action could only be

accounted for on the theory that it would enable a deposed official to accumulate a large salary account for services which he had not performed. Under such circumstances, every rule of public policy demands promptness in asserting claims for relief.

We think relator's complaint comes too late. The rule as to laches where one seeks restoration to office through the agency of mandamus is well stated in *People ex rel. Connolly* v. *Board of Education,* 114 App. Div. 1, 99 N. Y. Supp. 739, as follows: "I am of the opinion that the motion for a peremptory writ of mandamus should have been denied. A delay of nearly sixteen months in the absence of any explanation constitutes such laches on the part of the relator that he was not entitled to the relief sought, even though he would have had a legal right to be reinstated had he promptly made his application. In *People ex rel. Young* v. *Collis,* 6 App. Div. 467, 31 N. Y. Supp. 698, it was held, where an honorably discharged veteran claimed to have been improperly removed from his position, that he was guilty of laches, inasmuch as he had allowed more than four months to elapse before applying for a mandamus to compel his reinstatement. In *People ex rel. Croft* v. *Kealing,* 49 App. Div. 123, 63 N. Y. Supp. 71, it was held that the failure of a veteran to institute a mandamus proceeding until nine months after his removal was fatal, unless satisfactorily explained. The *Collis Case* was cited with approval in *People ex rel. Miller* v. *Sturgis,* 82 App. Div. 580, 81 N. Y. Supp. 816, where an order directing the issuance of a peremptory writ of mandamus to restore the relator to a position in the fire department was reversed upon the ground that the relator was guilty of laches; he having waited for a year and five months before instituting the proceeding, and no excuse being presented for the delay."

The judgment is affirmed, with costs.                    *Affirmed.*

A motion for a writ of error to the Supreme Court of the United States was denied on February 16, 1918.

A writ of error was allowed by the Supreme Court of the United States on April 24, 1918.