(27 App. Div. 219.)

### NATIONAL GUM & MICA CO. v. BRAENDLY.

(Supreme Court, Appellate Division, First Department. March 25, 1898.)

1. CONTRACTS—CONSIDERATION—TRADE SECRETS.

A manufacturing business was purchased on the strength of promises by the former manager that he would enter the purchaser's employ at a stated salary, in addition to an interest in the profits of the business; would disclose secret formulas necessary to the conduct of such business, as well as any new processes he might discover while so employed; and would not disclose such secrets to any competitor, nor employ them in a similar business, should he leave their employment. *Held*, that such promises were a valid contract, resting on the consideration of such purchase, and on the employment so given.

2. SAME—EMPLOYMENT.

A party who received employment as long as he desired, in consideration of his promise to disclose secret processes, is not released from his obligation because the contract failed to specify a particular time of employment.

3. SAME—BREACH—JUSTIFICATION.

To justify nonperformance of a contract for failure to share profits as agreed, it should appear that profits were made, and that such failure was the basis of refusal to perform.

4. SAME—WHAT CONSTITUTES BREACH—INFERENCE.

A party contracted to enter a certain employment, to disclose secret formulas, and, if he relinquished his employment, not to engage in the same or a similar business, nor to use or communicate to business competitors such formulas. He refused to make such disclosure, and, leaving his employment, organized a new corporation, in competition with which the old business could not be carried on. *Held*, that a violation of the contract must be inferred.

5. SPECIFIC PERFORMANCE—DISCLOSURE OF TRADE SECRETS.

A court has jurisdictional power to enforce an agreement to disclose secret processes, and to that end may restrain their disclosure or use to the detriment of the party entitled thereto.

6. INJUNCTION AGAINST DISCLOSURE OF TRADE SECRETS.

A business was purchased in reliance on a promise of the manager that he would enter the purchaser's employ at a certain salary, and disclose secret formulas necessary to the conduct of such business, and would not disclose such secrets to any competitor. *Held*, that the purchaser could enjoin the manager from disclosing the secrets in violation of the contract.

7. SAME.

Knowledge of secret trade processes, acquired in the service of their owner, will be protected by injunction from disclosure.

Barrett and Ingraham, JJ., dissenting.

Appeal from special term.

Action by the National Gum & Mica Company against John J. Braendly. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Edward A. Alexander, for appellant.

David S. Myers, for respondent.

RUMSEY, J. The appellant is a domestic corporation organized for the purpose of making mica pulp, flour paste, gums, and like articles, which are extensively used in the manufacture of wall paper, and other business of that kind. It is alleged in the complaint that on the 14th day of September, 1895, one Delery was the sole owner of a manufacturing business of that kind, which was carried on in the city of New York. The plant was worth but little, the value of the business consisting almost entirely in the secret processes for making the different articles in which Delery dealt. These secret processes, although owned by Delery, were known only to the defendant, who was at that time Delery's manager. At the time above mentioned the defendant approached the president of the plaintiff, and endeavored to induce him to buy the business carried on by Delery. It was agreed between the plaintiff and the defendant that if the plaintiff would purchase the business from Delery, and carry it on, and would engage the defendant as its agent, at a salary of $25 a week, and give the defendant an interest in the profits of the business, the defendant would work as the agent of the plaintiff; would disclose and show to the plaintiff the secret processes which the plaintiff was about to purchase from Delery; would agree not to communicate said processes to anybody else, and would agree not to manufacture the articles from said processes himself, should he thereafter leave the plaintiff's employ; nor would he engage in the same line of business. Relying upon that agreement, the plaintiff purchased the business from Delery at the price of $2,500. It engaged the defendant at the agreed salary, which was paid to him so long as he saw fit to stay with the plaintiff, and proceeded to carry on the business in which Delery had been engaged, and which it had bought from him. The defendant remained in the plaintiff's employ a comparatively short time, but he refused to disclose to the plaintiff or to its agents the secret processes for making the articles in which it dealt, and finally, without any reason, left the plaintiff, and organized a corporation for the purpose of carrying on the same business, and the manufacture of the same class of articles. For a second cause of action it was alleged that, as a part of the same contract, the defendant agreed that any improvements which he made in the process of manufacture while he was in the employ of the plaintiff as its agent, and any secret processes he might discover, should belong to the plaintiff and that he would not disclose them to any other person, but that he had disclosed them, or was about to disclose them, to the corporation which he had organized to compete with the plaintiff's business. For a third cause of action it was alleged that it was agreed that the defendant would not disclose any secrets or secret process which he should learn from other

of the plaintiff's employés while he was so engaged as plaintiff's agent. It is further alleged that the plaintiff had in its employ certain persons, who discovered other secret processes and improvements in the processes used by the plaintiff in its business; that these were disclosed to the defendant, to enable him to carry on the business, but the defendant, after leaving the plaintiff, had disclosed or threatened to disclose these processes to the competitor of the plaintiff, in whose employ he had entered. Upon the trial the defendant was not called upon to give evidence, but the complaint was dismissed at the close of the plaintiff's case. There was practically no dispute about the facts, and the only questions presented are whether the contract was a valid one, and one which can be enforced by the courts, and, if it was, whether the plaintiff had proved facts from which the court should have inferred that the defendant was violating his agreement not to disclose the secret processes, or to make use of them. The contract was established by the testimony of the general manager of the plaintiff, who stated, in substance, that the defendant, being in the employ of Delery, came to the witness, and asked him to purchase Delery's business; giving the reasons why he desired him to do so. After some negotiation with Delery, the general manager told the defendant that they were about to close a bargain with Delery for the purchase of the business, but that they would be practically powerless to carry on the business, because none of them knew anything about it, unless the defendant would stay with them and show them the business; and it was agreed between the witness and the defendant that if plaintiff bought the business from Delery, and employed him as manager, and paid him $25 a week as a salary, he would show them all the formulas, and would not go out and start another business, or disclose those secrets to anybody else. The defendant said, also, in the same conversation, by way of further inducement to the purchase of the property, that there were other things which he thought he could make, and which he would make, for the benefit of the business. This is a concise statement of the agreement in that behalf, which was sworn to by the general manager of the plaintiff. It is not denied that after that agreement was made, and in reliance upon it, the plaintiff bought the business of Delery, entered upon it, and hired the defendant as its agent, at a salary of $25 a week, which was regularly paid to him so long as he saw fit to stay in the plaintiff's employ.

It is objected by the defendant that there was no consideration for his entering into this contract, because there was no agreement on the part of the plaintiff to employ him for any particular time, or, indeed, to employ him at all, but that the plaintiff was at liberty to discharge him whenever it saw fit. To this objection there are two sufficient answers, each one of which is based upon an elementary rule of the law of contracts: In the first place, it is conceded by the evidence that the plaintiff was induced to enter into this bargain by the promise of the defendant to do the things which are alleged in the complaint. The purchase from Delery by the plaintiff at the request of the defendant was of itself a

sufficient consideration from the plaintiff to make this a binding contract. It hardly needs the citation of authority to establish the proposition that the consideration of a contract may be furnished, not only by a benefit moving to the promisor, but by the fact that the promisee will be injured if the promisor does not keep his promise. Rector of St. Mark's Church v. Teed, 120 N. Y. 586, 24 N. E. 1014. It is quite clear that the investment of the plaintiff's money in this business at the request of the defendant, which would prove practically worthless unless the defendant kept the promise which he made, was, in a legal sense, an injury to the plaintiff. It is complained that there was no obligation on the part of the plaintiff to employ the defendant for any particular time, and, because of the lack of an agreement to that effect, the defendant received no consideration. But it appears, without dispute, that although the plaintiff did not agree to keep the defendant in its employ for any particular time, yet it did employ him, and pay him the agreed salary, and kept him there until he saw fit to leave; and the performance of the condition supplied the lack of a previous obligation, if there was one. The thing which the defendant expected to get, in addition to the plaintiff's purchase, was employment. That, it is conceded, he did get, and kept just so long as he desired. Although there might have been no obligation on the plaintiff to keep him for any particular time, yet, so long as it did keep him, and was willing to keep him, and paid the salary which it had agreed to pay him, it performed its part of the contract, and he was bound to perform his. Miller v. McKenzie, 95 N. Y. 575; Beckwith v. Brackett, 97 N. Y. 52.

But it is said that the plaintiff did not give to the defendant the interest in the profits which it had agreed. The answer to this is twofold: In the first place, it did not appear that any profits had been made; and, in the second place, it was quite clear from the testimony that the defendant did not base his leaving the employ of the plaintiff, and his threatened disclosure of these processes to the other corporation, upon any such ground, so far as the evidence showed. The reasons which he had for leaving the plaintiff's employ were not based upon any complaint that its contract with him had been violated. So far as the contract, therefore, is concerned, it is quite clear that it was a valid contract; that the plaintiff had performed its part of it, so far as the evidence shows that it was capable of performance; and that the defendant had refused to perform.

It is said by the defendant, however, that there was no evidence that he had violated his contract. It is proved that the defendant had left the employ of the plaintiff, and had organized another corporation for the purpose of competition with the plaintiff, and which did compete with the plaintiff, and that he had refused to furnish to the plaintiff the secret processes which were within his knowledge while he was in Delery's employ, so that, after he had left the employment of the plaintiff, it was not able to carry on the business in competition with the new corporation with which he was engaged. All these facts were made to appear

from the testimony, and there is no doubt that, upon the case as it was finally presented to the court at the trial, there had been on the part of Braendly a violation of his contract, to the serious injury of the plaintiff in its business.

There is no doubt that so much of the contract as agreed to disclose to the plaintiff the secret processes used in the manufacture of its goods, and not to disclose those secrets to anybody else, and not to use them in the business of any other person, was valid, and could be enforced. Jarvis v. Peck, 10 Paige, 118; Alcock v. Giberton, 5 Duer, 76. It is said that the court cannot compel the disclosure of these secret processes. In one sense, that may be very true; but, as a step towards compelling the defendant to perform that part of his agreement, it certainly has the power to restrain him from disclosing those processes to anybody else, and to punish him if he violates an injunction imposing that restraint. It may do this, not only in performance of the contract by which he agreed not to disclose these secrets, but also, in the absence of that negative stipulation, by way of compelling him to perform the contract which he made, to disclose those processes to the plaintiff. Lumley v. Wagner, 1 De Gex, M. & G. 604; Catt v. Tourle, 4 Ch. App. 654; Peabody v. Norfolk, 98 Mass. 452. As to the power of the court, therefore, there can be no question. Neither is there, as we apprehend, any doubt that the plaintiff made a case entitling it to some portion, at least, of the relief which it demanded. These trade secrets were the most valuable portion of the business which the plaintiffs bought from Delery. They constituted practically all there was of it. While they were known to the defendant, they were owned by Delery; and the plaintiff was induced to buy them from Delery upon the promise of the defendant, not only that he would disclose those secrets to the plaintiff, but that he would not disclose them to anybody else. Relying upon this agreement, the plaintiff was induced to expend a substantial sum of money in the purchase of this business. When that business was purchased the defendant assumed towards the plaintiff, with regard to these processes, a confidential relation. He had in his hands all that was of substantial value to the business which he had induced the plaintiff to buy; and one essential part of the transaction was that these processes, which constituted this large proportion of that value, should be disclosed to the plaintiff, and should not be disclosed to anybody else. The effect of this disclosure, as is quite apparent, and as appears from the testimony, would be to materially depreciate the value of the property which the defendant had induced the plaintiff to buy. Although the processes were not patented, yet, as they were secret, and as their secrecy was protected by the contract between the defendant and the plaintiff, the plaintiff is in a situation to insist that the defendant, who agreed to protect the secrecy of these processes, and thus preserve their value, should not be permitted to disclose them, and thus deprive the plaintiff of the valuable property which he had induced it to purchase. Baldwin v. Van Mischeroux, 5 Misc. Rep. 386, 25 N. Y. Supp. 857; Id., 83 Hun,

43, 31 N. Y. Supp. 696. The power to restrain the violation of a secret thus protected by contract between the parties is well settled. That power, and the extent to which the secret will be protected, were examined and determined in this court in the case of Kodak Co. v. Reichenbach, 79 Hun, 188, 29 N. Y. Supp. 1143, where the cases were examined, and the conclusion was reached that when the value of the property rested in the secret processes, which were not patented, an employé who acquired a knowledge of the processes by virtue of his employment would be restrained from a disclosure of them, at the suit of his employer. While it appears in this case that the processes were owned by Delery, and the defendant did not acquire them during the time he was in the employ of the plaintiff, yet, as they belonged to Delery; as, between Delery and the defendant, they were secret processes; and the defendant, by his representations that they should remain secret as to the plaintiff, induced it to purchase the business,—the rules laid down in the case of Kodak Co. v. Reichenbach apply here with equal force. The same question was presented to the appellate division, in the Fourth department, in the case of Little v. Gallus, 4 App. Div. 569, 38 N. Y. Supp. 487, where it was held that the owner of a process for manufacturing an article, which was kept secret from all but confidential employés, might restrain them, after they had left its employ, from disclosing or using in a rival establishment their knowledge thereof, acquired while occupying such confidential relations. These two cases were, as we think, well decided; and they are ample authority for giving to the plaintiff the relief which he demanded, as to the processes which were known to Braendly at the time of the purchase of the business from Delery. With regard to the processes discovered by employés of the plaintiff, and disclosed to Braendly, while he was in their employ, to enable him to prosecute his work, the case is still stronger, and it is brought precisely within the rules laid down in the two cases above cited. As to all these secret processes, then, upon the case made by the plaintiff, it was clearly entitled to a judgment restraining the defendant from violating his contract by their disclosure, and it was error to refuse such a judgment to it.

We have not considered whether the plaintiff is entitled to an injunction restraining the defendant from entering into the employ of this competitor corporation. This judgment must be reversed without regard to that question. The question of the validity of that portion of the contract, and whether, upon the whole, the plaintiff is entitled to a specific performance of it if it is valid, is one which need not be decided until the defendant's version of the case shall have been made to appear; and then, upon the whole case as presented to it, the court will be in a situation to decide whether that portion of the contract should be enforced, or how far its enforcement is necessary to the complete protection of the business which this defendant induced the plaintiff to invest its money in.

The judgment should be reversed, and a new trial ordered; costs to appellant to abide event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

INGRAHAM, J. (dissenting). The complaint alleges three causes of action: First. That the plaintiff, a domestic corporation, on and before the 14th of September, 1895, purchased from one Delery a certain manufacturing business, conducted in the city of New York, which business consisted of a lease of the premises 502–504 West Forty-Fifth street, some old machinery, and some secret processes for manufacturing products described in the complaint. That said secret processes were owned by the said Delery, but were not known to him, but were known to the defendant, and were the most available part of the business so owned by the said Delery. That on the 14th day of September, 1895, it was mutually agreed between plaintiff and defendant that if plaintiff would purchase the said business from said Delery, and would agree to engage the defendant as its agent, at a salary of $25 per week, and to give to the defendant an interest in the profits of said business, said defendant would work as the agent of the plaintiff, would disclose and show to the said plaintiff all the secret processes which the plaintiff was about to purchase from the said Delery, would agree not to communicate the said processes to anybody else, and would agree not to manufacture the articles from said processes himself, should he thereafter leave plaintiff's employ; nor would he engage in the same line of business. That plaintiff purchased said business from said Delery, engaged the defendant at a salary of $25 per week, gave to said defendant an interest in the profits of its business, and performed all parts of its said agreement by it to be performed, but that the said defendant, although duly requested, has failed and refused to disclose and show to the said plaintiff the various secret processes; has failed to perform his part of the said agreement, and has, without just cause or reason, left the employ of the plaintiff; has started a factory for the purpose of manufacturing the said articles from the said processes above herein mentioned, and has notified the plaintiff that he intends to manufacture the same, and to stay in that line of business. That the said defendant has organized said business about five blocks distant from that of the plaintiff. For a second cause of action, plaintiff alleges that it was mutually agreed between plaintiff and defendant that defendant should work as an agent of plaintiff to improve the secret processes which plaintiff had purchased of the said Delery, and to discover other secret processes for making new products, and, in consideration of and for defendant's agreement so to work for plaintiff, plaintiff agreed to give defendant a salary of $25 per week, and an interest in the profits of its business; that while in the employ of the plaintiff, and while engaged in working on behalf of plaintiff, defendant made improvements in the processes which plaintiff had purchased of said Delery, and defendant also discovered another secret process for the manufacture of plaintiff's goods; that the defendant has threatened and is about to use said improvements and the said process which he discovered while in the plaintiff's employ to manufacture

for the company which he has organized, and to disclose the same to the parties interested in the said company, which, if carried out by said defendant, would be a great disadvantage to the plaintiff. For a third cause of action, it is alleged that it was mutually agreed between plaintiff and defendant that, in consideration of and for plaintiff's engaging defendant as above stated, the defendant would agree not to disclose any secrets or secret processes or other information relating to the business of the plaintiff, which said defendant should learn from other employés of the plaintiff while said defendant was in the plaintiff's employ; that, while in the employ of the plaintiff, said defendant learned certain secret processes (described); and that the defendant has left the plaintiff's employ, has organized a corporation, and is about to start the manufacture of various articles now manufactured by plaintiff, as in the first and second causes of action alleged. And the plaintiff demands judgment restraining the defendant from disclosing to any person or persons information concerning the manufacture of the articles mentioned in the complaint, or disclosing to any person or persons any information concerning the improvements in the processes which said defendant discovered in the plaintiff's employ, and from manufacturing any of the articles described in the complaint, or aiding in the manufacture of the same.

The general manager of the plaintiff corporation, who purchased the business from Delery, testified that before he made the purchase he had a conversation with the defendant, who stated to him that he was acquainted with the secret processes employed in the conduct of the business; that he could make the goods "better than anybody on the market"; that he had a large trade with several wall-paper manufacturers, whom he could control; and that, if the plaintiff purchased the business, he would stay with the plaintiff, and disclose all these secrets. And, as the witness stated, "he promised everything." "We were to give him so much a week. I believe it was $20 or $25 a week,—$25 a week." Subsequently the witness had another conversation with the defendant. At this conversation the witness told the defendant that he was about to close with Dr. Delery, and buy the business; and the witness wanted the defendant to understand that without him the plaintiff would be practically powerless to go on with the business, because none of them knew anything about the business, and had never engaged in any business like it before. "I said to the defendant that: 'If we buy this business from Dr. Delery, will you agree to stay with us, show us the business,—show me, particularly,—and put down all the formulas? And then, after we are in it, and invest more money, you must agree that you will never leave us in the lurch, and go out with anybody else, and start any business, or disclose these secrets to anybody else; otherwise we wouldn't buy the business.' He then assured me that if we bought the business from Dr. Delery, and paid him $25 a week as a salary, that he would disclose all these secrets; that he had other things which he thought he could make, and which he would try to make, and he would never go into the same line of business." The witness

further testified that they then purchased the business from Delery, paying $2,700 for it, and that the same was purchased solely on the faith of the representations of the defendant; that thereafter, on behalf of the plaintiff, the witness engaged the defendant to work for the plaintiff, and he started in to work for the plaintiff; that his salary at that time was $25 a week; that he subsequently asked the defendant to show him how to make the various articles which the plaintiff purchased of Delery, but that "he put it off, on one pretext or another," and failed to disclose such secret processes; that the defendant was in the employ of the plaintiff until some time in February, 1897, when the defendant called the witness' attention to the promise of an interest in the profits of the business, and asked whether it could be arranged so that he (defendant) could get an interest in the business; that the witness said: "Yes; if you do your duty, and we make money, I will see that you get a fair interest in it." This was all, apparently, that was ever done towards giving the defendant an interest in the business, which it is alleged in the complaint the plaintiff promised the defendant; and immediately after their conversation, and the refusal by the plaintiff to give the defendant an interest in the business, the defendant left the plaintiff's employ. The bill of sale from Delery to plaintiff was not produced. The witness says that he does not remember what the bill of sale of the business contained, or whether it said anything about secret processes, but he did not think it did. The witness further testified that before he purchased the business the defendant said to him:

" 'If you will buy this business, I will show you and instruct you in the manufacture of all these articles.' I said: 'Supposing we could not agree, or anything?' He said: 'I can make a living. I can go into another line. I have been in other lines.' I said: 'You know it would ruin us, because I don't know the people, and it would take me some time.' He said: 'I will stay with you until you thoroughly know everything.' He said: 'I won't agree to stay with you forever, but, if I don't, I will agree not to go into that line.' That was before we purchased the business."

The witness testified to other conversations with the defendant, but they were substantially to the same effect. There was no agreement made by the plaintiff that they would employ the defendant for any particular time, or that they would ever pay him any sum of money. Nor was there every any consideration paid to the defendant.

It is quite clear that this contract was unilateral. It imposed no obligation upon the plaintiff to do anything. For it the defendant received no consideration. The defendant was at the mercy of the plaintiff,—to be dismissed at any moment. The condition upon which the obligation of the defendant arose was that if the plaintiff would employ him, by some valid contract of employment, at a salary of $25 a week, and would give him an interest in the profits of the business, the defendant would work as agent of the business. It is not alleged that plaintiff offered to make any such contract with the defendant. He was simply continued in the employ of the plaintiff, and paid a salary while so employed; and it expressly appears from the testimony of the

plaintiff's manager that the defendant requested the plaintiff to give him an interest in the business, which the plaintiff refused to do; so that, so far as the plaintiff assumed any obligations to the defendant, the plaintiff had refused to perform them. That a court of equity should by decree specifically enforce a contract thus made, when the parties seeking such judgment have neglected to perform the covenants which they assumed, and specifically refused to give to the defendant an interest in the business which the plaintiff admits they promised, would be opposed to all principles of equity, and would result in merely compelling the defendant to remain in the plaintiff's employ, while the plaintiff, on their part, were under no obligation to continue such employment, and had refused to give the very interest which was the inducement to the defendant to make the promise. It is quite evident that if the defendant were to remain in the employ of the plaintiff, devoting all his time to the advancement of the business, making inventions for the benefit of the business, and disclosing such inventions, when made, to the plaintiff, his protection required that he should have some binding obligation from the plaintiff, by which he would be assured some advantage from his efforts and inventions; and when the plaintiff refused to make any such binding contract, which would place the defendant in a position to enforce it, so that he would not be subject to a discharge at the mere whim and pleasure of the plaintiff, it would seem to be most inequitable to compel the defendant by injunction specifically to perform the agreement on his part, and thus create by injunction an involuntary servitude which would continue during the pleasure of the master, but which the servant had no power to terminate, and upon its termination would be entitled to no advantage for the services which he had rendered, except the compensation allowed during the continuance of the employment. There was nothing in the agreement between the plaintiff and the defendant by which the defendant agreed that his inventions or discoveries during the time of his employment by the plaintiff should belong to the plaintiff, or should be their exclusive property. Nor is it shown that the inventions by the defendant prior to the time that the plaintiff purchased the business were in any sense the property of the former owner of the business. Whatever right this plaintiff acquired by the purchase of the business from Delery, it does not appear that Delery, in terms, attempted to convey to the plaintiff the secret processes that Delery had invented and used. The evidence as to any agreement between plaintiff and the defendant is extremely indefinite, consisting only of conversations by which the defendant sought to induce the plaintiff to purchase the business. It seems to me clear that there was no binding agreement intended to be made by these conversations,—certainly none that was understood to be binding upon the plaintiff; and the plaintiff, although requested to make some sort of a binding agreement which would give to the defendant some assurance that he would have an interest in the business, refused to do so. It seems to me that, upon this evidence, there was no contract proved which would justify a court of equity in

decreeing specific performance. Whatever understanding there was between the parties, the plaintiff has failed to perform what was to be performed upon its part. The complaint does not allege that the defendant has threatened or is about to disclose the secret processes which he used in the business prior to the time that it was purchased by the plaintiff. The only allegation as to threatened disclosures is contained in the second cause of action, which relates merely to the improvement of the secret processes made by the defendant subsequently to the purchase of the business, but it is not alleged, nor was it proved, that there was any agreement by which the plaintiff should be the owner of the secret processes discovered by the defendant after the plaintiff purchased the business; and there is not a particle of evidence in the case to show that the defendant has ever threatened to or has ever disclosed such secret processes to any one. The only evidence is that when the defendant left the plaintiff's employ he organized a company to carry on the business which he had before been employed by the plaintiff to carry on. In the absence of an allegation that the defendant was about to divulge the processes of which he had acquired a knowledge while engaged in the plaintiff's business, or in the business that had been acquired by the plaintiff, it certainly was not entitled to an injunction restraining such disclosures; and the only evidence at all in the case is that the defendant, having left the plaintiff's employ because the plaintiff had refused to give him an interest in the business, is about to continue a business to earn his own livelihood, and, in continuing that business on his own account, to use the knowledge that he has acquired, and which, it is not alleged or proved was the property of the plaintiff. I think, therefore, that the whole evidence clearly shows that there was no contract binding upon the defendant, which the plaintiff was entitled to enforce, and that there was no evidence to show that the defendant was either about to or had violated any duty which he owed to the plaintiff, or that entitled the plaintiff to any relief. For these reasons I think the complaint was properly dismissed, and that the judgment should be affirmed, with costs.

BARRETT, J.  I concur with Mr. Justice INGRAHAM in this case. The question presented to us is not whether the contract was enforceable at law. Such cases as Miller v. McKenzie, 95 N. Y. 575, and Beckwith v. Brackett, 97 N. Y. 52, have, therefore, no application. It is undoubtedly good law that a promise to pay, given by A. to B., in consideration of future services to be rendered by the latter, becomes valid and binding upon the rendition by B. of the services, in reliance upon A.'s promise. But how could such a contract be specifically enforced in equity? It seems to me that any discussion of the doctrine of consideration, in this aspect, or in its relation to an action for damages for breach of the contract, only tends to obscure the real question. That is, whether the contract here is such that it can be specifically enforced. Upon this question the acts of the parties under it are of

but little moment. Equity looks at the terms of the contract itself, not at its sequences or results. In my judgment, this contract cannot be specifically enforced,—not because of anything the plaintiff did under it, but because of what it had the power to do. Equity cannot aid the plaintiff, because the contract permitted it to discharge the defendant at its pleasure, and because its agreement to give him an interest in the profits was hopelessly indefinite. It would be a new doctrine of equity that a contract which fails to define with precision the legal obligation of one of the parties can be specifically enforced because, under it, that party acted fairly, and did the best he could in view of subsequent conditions. It is the agreement as made, not as it turns out, which the court is authorized to enforce. Thus, it is not of the slightest consequence whether there were profits or not, or whether the defendant left the plaintiff on that account or not. He is not sued for a breach of his contract. He is sought to be held to it. And this cannot be done, because if it were the other way the plaintiff could not be held to it. The plaintiff may employ the defendant at $25 per week, and it may give him some kind of an interest in the profits. And it may not. The court certainly could not compel it to do so. How can this plaintiff seriously ask us to specifically enforce such a contract against the defendant so long as it desires? I do not wish to be understood as limiting my concurrence with Mr. Justice INGRAHAM to this single question of law. I also concur in his conclusions upon the facts, and upon the other questions which he discusses.