such officer." The case differs materially from those cited by appellants where the wrongful official acts did not involve any public expenditure. That the want of jurisdiction may be challenged in an action of this kind was decided in the case of Osterhoudt v. Rigney, 98 N. Y. 222. As to such of the claims as had been disallowed by the town board, it may further be said that such action of the town board constituted a judicial determination by a tribunal of competent jurisdiction that such claims were illegal, which determination, until reversed or annulled as provided by law, is conclusive on every one, including the board of supervisors.

As to such rejected claims, however, the appellants claim the right of review under section 16 of the county law (chapter 686, p. 1748, Laws 1892), which provides that the board of supervisors "may correct any manifest clerical or other error in any assessment or returns made by any one or more town officers to such board or which may or shall have properly come before such board for its action, confirmation or review." It has been held that this statute conferred upon boards of supervisors no power to review the action of town officers in respect to the merits or legality of the questions before them, but only to make clerical corrections and perform ministerial duties in reference thereto. Matter of Buffalo Mutual Gaslight Company, 144 N. Y. 228, 39 N. E. 86; Hermance v. Supervisors, 71 N. Y. 481.

The judgment should be affirmed, with costs. All concur.

---

EASTERN EXTRACTING CO. v. GREATER NEW YORK EXTRACTING
CO. et al.

(Supreme Court, Appellate Division, Second Department. May 1, 1908.)

1. PATENTS—INFRINGEMENT—INJUNCTION—JURISDICTION.
    Only a federal court has jurisdiction of a suit to enjoin an unauthorized use of a patented process.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 466.]

2. SAME—"PROCESS."
    A "process," as distinguished from a "machine," which is a thing, is a mode of acting on materials to produce a certain result, so that one may be using the same process as another, though using different machinery in applying it.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 366–369.
    For other definitions, see Words and Phrases, vol. 6, pp. 5642, 5643; vol. 8, p. 7766.]

3. INJUNCTION—FRAUDULENT USE OF UNPATENTED PROCESS.
    The use of a secret unpatented process by one who has obtained it by fraud or bad faith will be enjoined.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 74.]

4. SAME—PATENTS—PROCESS NOT COVERED BY PATENT.
    Plaintiff's secret unpatented process for extracting alcohol from the wood of empty whisky barrels, the fraudulent use of which by defendant is sought to be enjoined, is not covered by any patent, though using many of the elements of patented processes, 50 per cent. more alcohol being

obtained by it than by any of them, and it doing away with many things required in the other processes; and therefore the state court has jurisdiction.

## Appeal from Special Term.

Suit by the Eastern Extracting Company against the Greater New York Extracting Company and others to enjoin the use of an alleged secret process for extracting alcohol from the wood of empty casks and barrels. Judgment for plaintiff. Defendants appeal. Affirmed.

The following is the opinion of Kelly, J., in the court below:

There is no doubt in my mind that the defendants are using the same process for extracting alcohol from empty barrels as is used by the plaintiff at its factory in Jersey City. I have had some difficulty in differentiating this process from that described in the Peace patent, introduced in evidence, which patented process was in use in Philadelphia before the plaintiff engaged in business. The plaintiff corporation is controlled by the Philadelphia company, which owns the Peace patent; but, if the secret process claimed by the plaintiff is the patented process, this court has no jurisdiction to enjoin the defendants. Resort must be had to the federal courts. Continental Co. v. Clark, 100 N. Y. 365, 3 N. E. 335. Certainly the defendants are using either the patented Peace process or the plaintiff's secret process. But, on re-examining the evidence and the able briefs submitted by the learned counsel for the parties to this litigation, plaintiff and defendants, I reach the conclusion that the plaintiff's process, in use in Jersey City, is different from that described in the Peace patent, entitling the plaintiff to protection against surreptitious and fraudulent interference.

A "process" is defined as "a mode of treatment of certain materials to produce a given result; an act or a series of acts performed upon the subject-matter to be transformed and reduced to a different state or thing." Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139. And the difference between a machine and a process is pointed out in the following language: "A machine is a thing. A process is an act or a mode of acting. The one is visible to the eye, an object of perpetual observation. The other is a conception of the mind, seen only by its effects when being executed. Either may be the means of producing a useful result. The mixing of certain substances together, or the heating of a substance to a certain temperature, is a process." Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279. In Tilghman v. Mitchell, 2 Fish. Pat. Cas. (U. S.) 518, Fed. Cas. No. 14,043, the court says that a "process" is entitled to protection by patent, and that it is no answer to a claim of violation for defendant to aver that his machinery may differ from that of the complainant. "In considering the question as to the infringement of a process, it is immaterial whether defendant's machinery is the same as that described by plaintiff, as that forms no part of the invention. The inquiry is: Does defendant, whatever his machinery is, produce the same result according to the plaintiff's process?" And in the Proctor Case, supra, the court said: "Perhaps the process is susceptible of being applied in many modes and by the use of many forms of apparatus. The inventor is not bound to describe them all in order to secure to himself the exclusive right to the process, if he be really the inventor or discoverer." The plaintiff's secret process, in so far as it differs from or is an improvement on the process described in the Peace patent, is not patented; but, given a secret process owned by an individual or corporation and the use of which is valuable, a court of equity will interfere by injunction to prevent its use by one who has obtained it by fraud or bad faith. Pomeroy, Equity Jurisprudence, § 922 et seq., tit. "Constructive Fraud"; Eastman Co. v. Reichenbach, 79 Hun, 183, 29 N. Y. Supp. 1143; Little v. Gallus, 4 App. Div. 569, 38 N. Y. Supp. 487; Thum v. Tloczyuski, 114 Mich. 149, 72 N. W. 140, 38 L. R. A. 200, 68 Am. St. Rep. 469, and cases there cited.

The business of extracting alcohol from the wood of empty whisky barrels by means of steam or heat appears to have been carried on in Boston as

early as 1892. A patent was issued in that year to one Michael Hickey, whose process was to pass steam through the barrels; the steam gathering to itself the spirit, which was subsequently reduced. Cyrus Jay Seltzer obtained a patent in 1901 for a process in which he subjected the barrels to a steam bath, external only; the vapor being collected inside the barrel. In 1904 Philip Peace patented the process now used by the Philadelphia corporation, which is the parent company of the plaintiff, and by the Peace process the empty barrels, with the bungs removed, were placed in a receptable, a 'square box lined with pipe, and exposed to heat to a degree sufficient to vaporize alcohol, but not sufficient to vaporize water. The fumes were drawn off by suction, exposing them to the action of a current of air, and the alcohol extracted. The plaintiff's process resembles that described in the Peace patent, but I am convinced that it is more than the Peace process. The results obtained by plaintiff's process are concededly much greater. Preceding plaintiff's process, the yield from the Hickey and Peace process was an average of 3½ pints of commercial alcohol per barrel treated. The plaintiff's process raised this average to 5¼ pints, an increase of 50 per cent.

To ascertain whether a given process is covered by a patent, we must look at the claim advanced by the inventor and recognized by the government in issuing letters patent. Section 4888, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3383), requires that the inventor "shall particularly point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery." "When the terms of a claim in a patent are clear and distinct, as they always should be, the patentee, in a suit brought upon the patent, is bound by it. He can claim nothing beyond it. * * * As patents are procured ex parte, the public is not bound by them, but the patentees are." Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344. "The scope of letters patent must be limited to the invention covered by the claim, and, while the claim may be illustrated, it cannot be enlarged, by the language used in other parts of the specification." Yale Lock Co. v. Greenleaf, 117 U. S. 554, 6 Sup. Ct. 846, 29 L. Ed. 952. Peace distinctly claimed as his invention the process of recovering alcohol from casks by subjecting the casks "to a nonaqueous gaseous agent at a temperature exceeding the boiling point of alcohol but below the boiling point of water, and treating said gaseous agent, which has been in contact with such casks, for removing the alcohol therefrom." The essential difference between the Peace method and that of his predecessors was the subjecting of the casks to heat, instead of the direct bath in steam; but the heat was of a degree which, while it vaporized the alcohol, left the watery vapors in the wood. The vapor was then exposed to a current of air, with the resulting average of about 3½ pints of alcohol to the barrel.

But "a patent for a process leaves the field open to ingenious men to invent and to use other processes, using part of the laws used by the patented process, or using all of them in other combinations or methods." Walker on Patents, § 14, citing Westinghouse v. Beacon Lamp Co. (C. C.) 95 Fed. 462. And so we find the plaintiff's alleged secret process using undoubtedly many of the elements used in the preceding patents, but doing away with the necessity of separating the alcohol and the watery vapors, doing away with the current of air claimed in the Peace patent, and subjecting the barrels in a hermetically sealed chamber to such an intense heat that all the vapors, watery and alcoholic, are extracted, and by their own pressure are forced out of the chamber and into the condenser. The result of the plaintiff's process is certainly a radical improvement on the Peace method. There is an increase of 50 per cent. in the product. It was said in Loom v. Higgins, 105 U. S. 580, 26 L. Ed. 1177: "It is further argued, however, that, supposing the devices to be sufficiently described, they do not show any invention, and that the combination set forth in the fifth claim is a mere aggregation of old devices already well known, and therefore it is not patentable. This argument would be sound if the combination claimed by Webster was an obvious one for attaining the advantages proposed—one which would occur to any mechanic skilled in the art. But it is plain, from the evidence and from the very fact that it was not sooner adopted and used, that it did not for years occur in this light to even the most skillful persons. It may have been under their very eyes. They may almost be said to have stumbled over it; but they

certainly failed to see it, to estimate its value, and to bring it into notice. * * * Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination is arranged of known elements, producing a new and beneficial result never attained before, it is evidence of invention." I have therefore reached the conclusion that the plaintiff's process is something beyond and different from the Peace process, that it is a secret process, and that plaintiff is entitled to the protection of equity against a fraudulent and surreptitious taking of this process from it.

As to the latter branch of the case, I have little difficulty in reaching a conclusion. The defendant Biderman, the organizer of the defendant corporation, the man who brought together the individual defendants in their new enterprise, came to the plaintiff's factory in Jersey City, disguised as a laborer. He obtained employment and admission to their extractor, he observed their methods, and he left, after two days, never returning for his wages. He admits, on the witness stand, that he went to plaintiff's factory to inform himself of their method of operation. But he says he already had mastered the process; that he discovered it in Cleveland, when he was engaged in boiling out molasses barrels. He tells a story of a fire in Cleveland, and the diffusion in the air of alcoholic vapors caused by the burning or heating of whisky barrels, and he says the process now used by plaintiff dawned upon him. In the first place, he is not corroborated as to his Cleveland experiences, and from his admitted bad faith and fraudulent entry into plaintiff's place of business, coupled with the fact that he, of all others, should immediately thereafter organize the defendant company, and start the competing enterprise, it taxes the credulity of the court beyond the limit of possibility. It is true that he had come East before his entry into plaintiff's factory, and that he had started the construction of an extractor. Where or how he obtained the information I do not know; but I am impressed with the belief that his original intention was to use the process described in the Peace patent. I think he started out with that intention, but visited the plaintiff's works to ascertain how their process differed from the Peace process. He obtained the information, and started in business with his fellow defendants.

This process is clearly the plaintiff's secret process. I do not see any proof that plaintiff has been damaged, as yet, beyond a nominal sum, and I do not appreciate the necessity for an accounting. But methods, such as were used by Biderman, are wrongful. They are dishonest, and cannot be countenanced in this country or in this state. Fair competition is always encouraged; but a man cannot, through deceit and by means of an appeal for employment as a laborer and assistance to earn his bread, enter the household of his benefactor and steal his belongings. This is, in effect, what Biderman did in this case. His transaction with plaintiff in Jersey City was concededly dishonest. There is no good explanation for it. He is not an ignorant man, nor unsophisticated. On the contrary, his powers of observation, and his familiarity with our business methods, and the facility with which he incorporated the defendant company, prove him to be a man who, for financial results, resorts to means not at all creditable. I find that his associates, the individual defendants. are parties to the wrong, inasmuch as they are attempting to avail themselves of the fruits of his dishonesty.

I therefore give judgment for the plaintiff for an injunction restraining the defendants from using or disposing of plaintiff's process. I award costs as against the defendant corporation and Biderman.

Settle findings on notice.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR and MILLER, JJ.

Maurice J. Katz and Alex B. Greenberg, for appellants.
Herrick, Farren, Chase & Pennie, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Mr. Justice Kelly at Special Term.