### WITKOP & HOLMES CO. v. BOYCE.

(Supreme Court, Special Term, Erie County. November 12, 1908.)

1. INJUNCTION (§ 56*)—SUBJECTS OF PROTECTION AND RELIEF—DISCLOSURE OF SECRETS.

Equity will restrain the disclosure of secrets communicated in the course of a confidential employment, whether the secrets be of trade, of title, or other secrets of the party important to his interests.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 110; Dec. Dig. § 56.*]

2. INJUNCTION (§ 56*)—SUBJECTS OF PROTECTION AND RELIEF—DISCLOSURE OR USE OF TRADE SECRETS.

Equity will restrain an employé from interfering, after termination of his employment, with the trade or good will of his former employer, and from making use of the knowledge or information gained from or contained in his employer's list of customers, and from canvassing and soliciting orders from them, independent of any contract; and where there is a written agreement that the employé will not, after leaving his em-

---

ployment, engage in a similar business or furnish to others lists of customers, or information of any kind pertaining to his employer's business, that fact furnishes an added ground for equitable interference.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 110; Dec. Dig. § 56.*]

3. INJUNCTION (§ 56*)—SUBJECTS OF PROTECTION AND RELIEF—DISCLOSURE OR USE OF TRADE SECRETS.

Under a contract of employment as a salesman, canvasser, collector, and deliveryman, such employment to be at all times under the direction and supervision of the employer, customers procured were customers of the employer, not of the employé, and an interference therewith by the employé, or use or disclosure of lists thereof, after termination of his employment, will be restrained.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 110; Dec. Dig. § 56.*]

4. CONTRACTS (§ 118*)—CONTRACTS IN RESTRAINT OF TRADE.

An agreement by one employed as a salesman, canvasser, collector, and deliveryman not to interfere, after termination of the employment, with the trade or good will of the employer, or to furnish to any other person lists of customers or information of any kind pertaining to the business of the employer, and not to solicit orders from his customers, is not an unlawful restraint of trade, and will be enforced by injunction.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 553; Dec. Dig. § 118.*]

Action by the Witkop & Holmes Company against Ervin G. Boyce for an injunction. A temporary injunction was granted, and defendant moves to dissolve the same. Motion denied.

August Becker and James A. Magoffin, for the motion.
George Clinton and Thomas A. Sullivan, opposed.

WHEELER, J. This is a motion to dissolve an injunction, granted ex parte, which restrained the defendant from interfering with the trade, custom, or good will of the plaintiff's business, or making use of the knowledge or information gained from or contained in plaintiff's original list, compilation, or collection of names and addresses of customers, or from calling upon, canvassing, soliciting, accepting, or filling orders for goods similar in kind to those carried by the plaintiff from the persons whose names and addresses are contained in the schedule attached to the complaint, being customers of the plaintiff upon whom the defendant had been accustomed to call to obtain orders.

The substantial facts in the case are that the plaintiff is a corporation engaged in the general business, in the city of Buffalo, of dealing in teas, coffees, baking powder, spices, cocoa, flavoring extracts, sugar, fine groceries, etc.; that it maintains a general store in the city of Buffalo, with branches in the cities of Batavia, Jamestown, and Niagara Falls; that its retail business is done upon a general cash basis; that as an inducement to its customers it gives trading stamps of its own issue, redeemable by the plaintiff at its general and branch stores; that the plaintiff sends out its agents and canvassers with the stamp books to solicit trade and take orders from such customers for the goods sold by the plaintiff and which such customers may desire to purchase; that an original list or compilation of the names and ad-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dresses of such customers is made and kept by the plaintiff, and amounts to about 10,000 names; that the city is divided into districts or routes, and that, in order to facilitate its said business, the plaintiff sends out from its general and branch stores its horses and wagons in charge of these drivers or salesmen, and the work of such drivers or salesmen includes the calling upon the customers listed upon his route, the taking of orders for goods which such customers may desire to purchase in the future, the delivery of goods already ordered and giving trading stamps for the amount of the purchase made, the collection of money for goods delivered, and the soliciting of new customers on said route; that for about two years last past the defendant had been in the employ of the plaintiff as one of its salesmen or drivers, and on or about the 20th of March, 1908, while in its employ, the defendant made and executed a written contract with the plaintiff, in which the plaintiff agreed to employ, and the defendant to enter into the employment of the plaintiff, as such salesman, canvasser, collector, or deliveryman, such employment to be at all times under the direction and supervision of the plaintiff. It was further stipulated in the agreement that the agreement might be terminated at any time by giving two weeks' notice, and the defendant further agreed that he would not—

"on the termination for any cause whatsoever of his employment with the party of the first part engage in the same line or a similar line of business as that now carried on by the party of the first part, or engage to work for any individual, firm, or corporation engaged in such line or a similar line of business, in the state of New York, for a period of two years from the time the employment of such party of the second part under this contract ceases, and that the party of the second part further agrees that he will not, during the term of his employment with the party of the first part, or at any other time thereafter, furnish to any individual, firm, or corporation other than the party of the first part any list or lists of customers, or information of any kind or nature pertaining to the business of the party of the first part, and that he will faithfully perform all the duties pertaining to his said employment with the party of the first part, to the best of his ability."

It further appears that, shortly prior to the commencement of this action, the defendant abandoned the service of the plaintiff and entered the employ of the Great Atlantic & Pacific Tea Company; that he has furnished to said tea company a list, in whole or in part, of the addresses and names of the customers of the plaintiff along his said route, whom he was accustomed to visit for the purpose of obtaining orders and delivering goods desired by them from the plaintiff; that he threatens and insists upon his right to continue to solicit trade from said customers for and on behalf of said Great Atlantic & Pacific Tea Company, and will do so unless restrained by the order of this court. Other facts in relation to the case are hereinafter mentioned and set forth in subsequent parts of this opinion. The defendant now moves for a vacation of such injunction order, which is opposed by the plaintiff.

We are of the opinion that the injunction should be continued. This conclusion, we think, is supported on several well-recognized principles of law and equity. The plaintiff contends the defendant's acts were in violation of his contract with the plaintiff, in which the de-

fendant agreed that he would not, on the termination of his employment, engage in the same or a similar line of business, either for himself, or as the employé of any individual, firm, or corporation, for the period of two years, nor furnish to any firm or corporation or individual "any list or lists of customers or information of any kind or nature pertaining to the plaintiff's business." The plaintiff also contends that the defendant's acts are in direct violation of the provisions of section 642 of the Penal Code, which, among other things, provides:

"7. Any person who may have heretofore obtained or may hereafter obtain any such list, compilation or other collection specified in subdivision six hereof, or any part thereof, or any copy or duplication of such list, compilation or collection or any part thereof, or the information contained in any such list, compilation, collection or any part thereof, and who, without the consent of the lawful owner of the original of any such list, compilation or collection, and with notice or knowledge of his rights, may at any time hereafter, make use of or attempt to make use of any such list, compilation or collection, or any part thereof, or of any copy or duplication of the whole or any part thereof, or of the information contained in any such list, compilation, collection or copy or duplication of any part thereof, for his own benefit or advantage, or that of any person other than said lawful owner, is guilty of a misdemeanor."

The plaintiff further contends that, independent of the contract between the parties and by virtue of general principles of equity, the defendant should be enjoined from enticing away or dealing with such of the plaintiff's customers as had heretofore given orders to the plaintiff through the defendant. We think the plaintiff may well rest its case on the last ground alone, and that the injunction is well sustained on principle and well-considered authority. The doctrine is broadly stated by Mr. Justice Story in his work on Equity Jurisprudence (section 952) where he says:

"Courts of equity will restrain a party from making disclosures of secrets communicated to him in the course of a confidential employment; and it matters not, in such cases, whether the secrets be secrets of trade or secrets of title, or any other secrets of the party important to his interests."

High, in his excellent work on Injunctions (section 19, vol. 1, 4th Ed.), declares that:

"The disclosure of secrets which have come to one's knowledge during the course of a confidential employment will be restrained by injunction; and where a confidential relationship has existed, out of which one of the parties has derived information concerning the other, equity fastens an obligation upon his conscience not to divulge such knowledge, and enforces the obligation when necessary by injunction."

The doctrine has been most frequently applied to cases where some secret process or formula of manufacture has been involved. The following decisions illustrate the rule when applied to such situations: Tode v. Gross, 127 N. Y. 480, 28 N. E. 469, 13 L. R. A. 652, 24 Am. St. Rep. 475; Tabor v. Hoffman, 118 N. Y. 30, 23 N. E. 12, 16 Am. St. Rep. 740; Eastman Kodak Co. v. Reichenbach, 79 Hun, 183, 29 N. Y. Supp. 1143; National Gum & Mica Co. v. Braendly, 27 App. Div. 224, 51 N. Y. Supp. 93; Little v. Gallus, 39 App. Div. 646, 57 N. Y. Supp. 104; Eastern Extracting Co. v. Greater N. Y. Extracting Co., 126 App. Div. 928, 111 N. Y. Supp. 738; Stone v. Goss, 65 N. J.

Eq. 756, 55 Atl. 736, 63 L. R. A. 344, 103 Am. St. Rep. 794; Peabody
v. Norfolk, 98 Mass. 452, 96 Am. Dec. 664. The principle of law,
however, is not confined to secret processes of manufacture or methods
of doing business, but has a much wider application, as stated by Mr.
Justice Story. The names of the customers of a business concern
whose trade and patronage have been secured by years of business ef-
fort and advertising, and the expenditure of time and money, con-
stituting a part of the good will of a business which enterprise and
foresight have built up, should be deemed just as sacred and entitled
to the same protection as a secret of compounding some article of
manufacture and commerce.

The Legislature of this state has recognized these rights of the busi-
ness public, and has made it a penal offense for any one having or
obtaining access, with or without the consent of the lawful owner,
to any original list or compilation or other collection of the names of
customers or subscribers used in connection with any lawful busi-
ness or occupation whatsoever, to copy, or cause to be copied, any
such list or compilation, or make any use of any such list or compila-
tion, "or of the information contained in any such list, compilation,
collection * * * for his own benefit or advantage, or that of any
person other than said lawful owner." Pen. Code, § 642. Independent
of the question whether the defendant in this case has been guilty of
such a violation of this section as would support a conviction or not,
it still must be perfectly apparent that this section is a legislative recog-
nition of the fact that the names and addresses of business customers
are legitimate business secrets, confidential in their nature, neither to
be divulged nor stolen by employés or any one else, and the knowl-
edge and information contained in such lists are not to be used by an
employé for his own benefit or for the benefit of any other person.

In recent years there has been developed, by the adjudications of our
courts and by legislation, a considerable body of law looking toward
the protection of the business world against unfair competition, and
if we correctly interpret these decisions a court of equity stands ready
to restrain such acts. We, therefore, are of the opinion that, inde-
pendent of any express contract between the parties, equity will re-
strain the acts of which the plaintiff complains, and which the de-
fendant threatens and claims the right to do. This arises out of a
violation of duty having its origin in the relation of employer and
employed, and an implied contract that an employé will not divulge
confidential knowledge gained in the course of his employment, or use
such information to his employer's prejudice.

Where, however, as in this case, there is a written agreement that
a party will not, after leaving his master's employ, engage in the
same line or a similar line of business, and will not furnish to others
lists of customers, or information of any kind or nature pertaining to
his employer's business, that fact supplies an added ground for the in-
terference of a court of equity in enforcing an observance of that
agreement. Davies v. Racer, 72 Hun, 43, 25 N. Y. Supp. 293; East-
man Kodak Co. v. Reichenbach, 79 Hun, 183, 29 N. Y. Supp. 1143;
Little v. Gallus, 4 App. Div. 569, 38 N. Y. Supp. 487; National Gum

& Mica Co. v. Braendly, 27 App. Div. 224, 51 N. Y. Supp. 93 ; Peabody v. Norfolk, 98 Mass. 452, 96 Am. Dec. 664.

The affidavits read on this motion strongly tend to show that the Great Atlantic & Pacific Tea Company, a corporation engaged in the same general business as that conducted by the plaintiff, has for some time been engaged in a systematic effort to procure the trade built up by the plaintiff, and that in furtherance of this purpose the tea company has induced numerous of the employés of the plaintiff to leave its service and enter the employ of the tea company, and that it has influenced them, in violation of their duty to the plaintiff, to give to the tea company the lists, names, and addresses of the plaintiff's customers. It appears that this defendant himself, prior to leaving the plaintiff's service, gave to the agent of the tea company the names and addresses of many, if not all, of the plaintiff's customers served by the plaintiff on the defendant's route or district; that he announced to some of these customers his intention of leaving the plaintiff's employ and entering that of the Great Atlantic & Pacific Tea Company, and asking for their patronage of the tea company, instead of continuing to deal with the plaintiff. The defendant has, as it appears, lent himself to the scheme to destroy or injure the plaintiff's business, and apparently in violation of the provisions of the Penal Code above cited, making it a misdemeanor to use the information contained in such list either "for his own benefit or advantage, or that of any person other than said lawful owner." It is clear he should be restrained, and there are reported cases where the courts have enjoined persons from doing practically the same thing the defendant here seeks to do and under substantially like circumstances.

In the case of Reynolds v. Dreyer, 12 Misc. Rep. 368, 33 N. Y. Supp. 649, the plaintiff was engaged in business as a wholesale dealer in cheese, butter, and groceries; its sales being mainly effected through the agency of salesmen driving over established routes and supplying goods to grocers° doing business on the line of said routes. The defendant was given a wagon driving over one of the routes, and contracted with the company that he would not, "after his employment in said business should cease, directly or indirectly engage in business in the city of New York, or within a radius of 10 miles from said city, in competition with his said employer, either on his own account or as the servant or employé of others." He was discharged for cause, and he then drove a horse and wagon carrying supplies of the same kind, soliciting customers of the plaintiff on the same route he formerly used. The court enjoined him.

In Davies v. Racer, 72 Hun, 43, 25 N. Y. Supp. 293, the plaintiffs were forwarding agents and custom house brokers, and entered into an agreement with the defendant whereby they employed him as a clerk to receive, influence, and produce orders and goods from shippers in consideration of a salary. In the agreement of employment the defendant agreed not to engage in the city of New York, or within 50 miles thereof, either directly or indirectly, in a similar business, or interfere with any of the plaintiffs' customers. The defendant left the plaintiffs' employ and engaged as a clerk with a firm in New York doing a similar business, and, it was alleged, interfered with the cus-

tomers of the plaintiffs by a systematic solicitation of their business. The court enjoined such acts.

In Tolman v. Mulcahy, 119 App. Div. 42, 103 N. Y. Supp. 936, the plaintiff was engaged in the business of making loans of money to individuals and firms. The plaintiff alleged that his business required a unique, technical, special, and peculiar knowledge, as well as methods and forms for its conduct, which were taught to the defendant after his execution of a contract not to divulge or reveal to any one outside the service of the plaintiff for a period of two years after leaving the plaintiff's employ. It was alleged that the defendant left the plaintiff's employ, and in violation of his agreement engaged with another firm and communicated his knowledge of the plaintiff's business to his new employers. The answer alleged the agreement was unconscionable, against public policy, and in restraint of trade, and was induced by false and fraudulent representations, and without knowledge on defendant's part of its contents. The justice at Special Term enjoined the defendant from communicating and revealing the plaintiff's forms or methods, directly or indirectly, and from sending letters to plaintiff's customers relative to such matters, but denied the motion for a temporary injunction restraining the defendant from entering the employment of the firm she engaged with. The Appellate Division said that in so doing the Special Term was clearly right.

For further cases where clerks and salesmen have been enjoined from working in opposition or competition to their employers, where they have made contracts not to do so, see Encyclopedia of Law and Practice, vol. 22, p. 867; Magnolia Metal Company v. Price, 65 App. Div. 276, 72 N. Y. Supp. 792; Mutual Milk & Cream Co. v. Prigge, 112 App. Div. 652, 98 N. Y. Supp. 458; Same v. Heldt, 120 App. Div. 795, 105 N. Y. Supp. 661.

It only remains to notice very briefly some of the arguments made by defendant's counsel. It is contended that the customers named in the complaint are the defendant's customers, and not the customers of the plaintiff. In this view we cannot concur. The contract with the defendant was one of hiring. He was employed and agreed to enter the plaintiff's service as a salesman, canvasser, collector, and deliveryman, such employment to be at all times under the direction and supervision of the plaintiff. It does not need argument to show that under such circumstances every customer procured was the customer of the plaintiff, and not of the defendant.

It is urged that the written contract was procured by fraud and misrepresentation as to its contents and purport. I am not impressed with this claim. The blanks in the contract were filled out in the defendant's own handwriting, and its contents and provisions were perfectly plain. The defendant admitted he was told by the plaintiff to read the contract before signing it. I believe he fully knew and understood its contents and provisions. But whether he did or not, in my judgment, is not very material in the disposition of this motion; for the court is of the opinion that, in the absence of any written contract or agreement, the plaintiff would still be entitled to the relief asked.

The counsel for the defendant contends that the contract is unconscionable, unjust, and against public policy, and therefore void, and

therefore one which a court of equity will not enforce. To the extent that the contract restrained the defendant from engaging to work for any individual, firm, or corporation engaged in a similar line of business in the state of New York for a period of two years after the termination of the defendant's employment with plaintiff, the contract will undoubtedly be refused enforcement in a court of equity, as it was refused in the case of Tolman v. Mulcahy, 119 App. Div. 42, 103 N. Y. Supp. 936. But in that case the court did enforce the valid provisions of the contract, and we think this court should do the same in this case.

The plaintiff in this case does not seek to restrain the defendant from entering the employment of the Great Atlantic & Pacific Tea Company, or of any other rival concern. It does not complain of his acts in so doing; but it does ask that he be restrained from interfering with the trade, custom, or good will of the plaintiff, and from making use of the knowledge or information gained from or contained in plaintiff's original list of customers, and from canvassing and soliciting orders from the plaintiff's former customers. This the plaintiff is entitled to, and it works no hardship to the defendant, or to the Great Atlantic & Pacific Tea Company, who now employ him. Such a limited restriction on the defendant's activities has been held over and over again as not unlawful restraints of trade.

Let an order be entered denying the motion to vacate the temporary injunction heretofore granted, with $10 costs of the motion.