APPLEBEE v. SKIWANEK.

(City Magistrate's Court of New York City. March 16, 1912.)

1. ABANDONMENT (§ 4*)—"PUBLICATION"—WHAT CONSTITUTES.
   Inventors have exclusive property in their inventions until, by publication, it becomes the property of the general public, and their mere manufacture of the invented articles for their own use is not "publication."
   [Ed. Note.—For other cases, see Abandonment, Cent. Dig. §§ 3–6; Dec. Dig. § 4.*
   For other definitions, see Words and Phrases, vol. 6, pp. 5841–5846.]

2. MASTER AND SERVANT (§ 60*)—DUTIES OF SERVANT.
   It is the duty of an employé to be faithful to the interests of his employer and to keep and guard his trade secrets.
   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 60.*]

3. MASTER AND SERVANT (§ 342*)—TIPPING.
   Where defendant, by a gratuity offered to the complaining witness' servant, procured a secret machine which the complaining witness had invented, defendant was guilty of a violation of Penal Law (Consol. Laws 1909, c. 40) § 439, making it a misdemeanor to give any employé any gift or gratuity without the consent of his master, with intent to influence his actions in relation to his master's business.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1287; Dec. Dig. § 342.*]

Application by Frank H. Applebee for a warrant against Frank Skiwanek for a misdemeanor. Warrant ordered to issue upon the filing of a complaint.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Emil E. Fuchs, of New York City, for complainant.
Meyer Greenberg, of New York City, for defendant.

FRESCHI, City Magistrate. The promise to tip and the paying of $10 later to one Henry Hall, an employé of the firm of Applebee & Neuman, by the defendant, is charged as a violation of the first part of section 439 of the Penal Law (Consol. Laws 1909, c. 40), which constitutes it a misdemeanor to give to any employé "any gift or gratuity whatever, without the knowledge or consent of the principal, employer or master of such agent, employé or servant, *with intent to influence his action in relation to his principal's, employer's or master's business."*

This statute was considered by the Court of Special Sessions in the case of People v. David Pergoli, which is reported in the New York Law Journal, issue of January 14, 1907. Mr. Justice Deuel, writing for the court in the Pergoli Case, said:

"It is not necessary to prove actual damage to the complaining company. All that is required is that the gift or gratuity be given 'with intent to influence' the action of the employé with relation to the employer's business. * * * The logic of the facts before us is that, as an employé of the complainant, the employé received a gift or gratuity from the defendants, and that this gift or gratuity was given with the intent to influence his action as such employé, concerning the business of his employer, whereby the defendant might obtain substantial advantage inconsistent with the interest of the employing firm. * * * The intent of the Legislature was to prevent a subornation of employés in any manner, and as to any matter concerning not the immediate employment, but as to any matter within the general business of the employer."

The people's witness Hall testified, in substance, that the defendant met him and said that if he (defendant) had one of the shanking machines manufactured by Herman Muller, a machinist, exclusively for Applebee & Neuman, and according to plans and specifications, owned exclusively by the firm, the defendant could reduce his losses occasioned by the return to him of defective pearl blanks, known in the trade as "seconds" in connection with the sales and delivery of pearl blanks made by him for that firm. The defendant added, according to Hall, "that Applebee & Neuman were a rich firm, and that they were rubbing it into him on the second business, while he was a small man," and that, if he (Hall) "could fix it so that he (defendant) could get one of our machines, it would be a very great favor to him, and that it wouldn't interfere with Applebee & Neuman's business at all, because he did not want any more than one machine, and that he did not want to go into the business of making these buttons," and the defendant concluded by saying that "there would be something in it for me (Hall) if I helped him out." It seems Hall was thereupon induced by the defendant to give Müller an order to manufacture one of Applebee & Neuman's shanking machines for the defendant, who was told by Hall to go to the machinist for the purpose of having his order executed.

There were, at the time, other shanking machines on the market; but Applebee & Neuman's machine incorporated a process or secret

device in shanking pearl blanks used in the manufacture of pearl buttons. Speed and economy is the claim advanced for it, and counsel for complainant further claims that said machine differed in many respects from those that could be obtained in the open market. The Applebee & Neuman shanking machine was not then on the market for sale.

[1] While it is true that that firm did not obtain the protection of the patent laws, they, as inventors, had exclusive property in their invention until by publication it became the property of the general public. Tabor v. Hoffman, 118 N. Y. 30, 34, 23 N. E. 12, 16 Am. St. Rep. 740. There was no "publication" of this machine save such, if it may be called a "publication," as was made by the delivery of the plans and specifications to Muller and the subsequent use of the perfected machines by the employés in the shop of Applebee & Neuman.

[2] The first duty of an employé is to be faithful to the interests of his employer and to keep any and all of his trade secrets and information concerning the business of the employer, where to divulge it would work a detriment to the interests of the master.

The character of the machines used, the place where manufactured, all things appertaining to them are matters, which, in the light of this case, affect the business interest of the firm. This information was secret and in its nature confidential and must have been communicated to Hall in the course of his employment as the chief mechanic of the firm. To disclose it was a breach of that trust reposed in him, just as is the furnishing to a competitor of a list of the employer's customers. Witkop & Holmes Co. v. Boyce, 61 Misc. Rep. 126, 112 N. Y. Supp. 874.

[3] Without their knowledge or consent, Hall, on the defendant's promise, told the defendant where the Applebee & Neuman shanking machines were made and gave his consent to Muller, who it seems believed, at the time, that it came from the firm, for the making and delivery of a shanking machine, to said defendant; and when Muller made the shanking machine for defendant he did so only after he got Hall's consent, acting, as Muller must have believed, as the authorized mouthpiece and agent of his employers.

It was part of Hall's duty to refuse to place, directly or indirectly, the shanking machine manufactured by Muller, exclusively for Applebee & Neuman with any other person, and to keep the secret of the peculiar process involved in shanking pearl blanks; and any person seeking to influence Hall by promise of a gift or gratuity to disclose any matter in connection with said machine, without the knowledge or consent of the employer, in my opinion, violates this law. The offering of a tip as a gift or gratuity to an employé without the knowledge or consent of the employer in order to influence the action of the employé in the master's business generally is prohibited.

I am of the opinion that a prima facie case is made out both on the facts and on the law.

Upon the filing of a proper complaint a warrant will issue against the defendant accordingly.